IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

PAUL MOLLOY and
JACQUELINE MOLLOY, on behalf of
themselves and all others similarly situated,

        Plaintiffs,

    v.

AETNA LIFE INSURANCE COMPANY and
AETNA INC.,

        Defendants.

Civil Action

No. 19-CV-03902

**[PROPOSED] ORDER GRANTING
FINAL APPROVAL OF CLASS
ACTION SETTLEMENT**

THIS MATTER comes before the Court for final approval of the Settlement Agreement and Release (also sometimes referred to as the "Settlement" or "Agreement"), submitted on March 3, 2023 by Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement.

WHEREAS, Plaintiffs, PAUL MOLLOY and JACQUELINE MOLLOY, on behalf of themselves and the proposed Settlement Class, and Defendants, AETNA LIFE INSURANCE COMPANY ("ALIC") and AETNA INC. entered into a Settlement on December 12, 2022;

WHEREAS, all capitalized terms used herein shall have the same meaning as set forth in the Agreement and are hereby incorporated by reference;

WHEREAS, on July 12, 2023 the Court entered the Preliminary Approval Order, preliminarily approved the proposed Settlement; and

WHEREAS, PAUL MOLLOY and JACQUELINE MOLLOY were appointed Class Representatives; and

WHEREAS, the Court, as part of its Preliminary Approval Order, directed that a plan for disseminating notice of the Settlement ("Notice Plan") be implemented, and scheduled a hearing

to be held on December 19, 2023 to determine whether the proposed Settlement should be approved as fair, reasonable, and adequate; and

WHEREAS, Defendants and Class Counsel have satisfactorily indicated to the Court that the Notice Plan was followed; and

WHEREAS, a final approval hearing was held on December 19, 2023, at which all interested persons were given an opportunity to be heard, and all objections to the Settlement, if any, were duly considered; and

NOW, THEREFORE, the Court, having read and considered all submissions made in connection with the proposed Settlement, and having reviewed and considered the files and records herein, finds and concludes as follows:

1.      The Court has jurisdiction over the subject matter of this Action and over all Parties to this Action, including the named Plaintiffs, all Settlement Class Members, and Defendants.

2.      On March 3, 2023, Plaintiffs filed their Unopposed Motion for Preliminary Approval of the Settlement.

3.      On July 12, 2023, the Court preliminarily certified the above-captioned matter as a settlement Class Action, defining the Settlement Class as follows:

> All members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by ALIC, who themselves, or who, as a subscriber, had a beneficiary covered by their benefits plan, who:
>
> o   Had a denied PBT benefit claim and/or denied PBT precertification request, for which either the claim was incurred, or the request was submitted, between June 1, 2017 and October 9, 2020 ("Class Period"); and
> o   Had a diagnosis code for head, neck, or brain cancer within the list of codes covered under Section 1 of the October 2020 revision to Clinical Policy Bulletin No. 0270; and

- o Did not have benefit claims for intensity-modulated radiation therapy paid or adjudicated as paid by ALIC.
- o The following persons are excluded from the Class: all individuals under the age of 21 at the time the claim for benefits was incurred or request was submitted; and all individuals covered by a Medicare Advantage plan administered or insured by ALIC. Also excluded from this definition are Defendants, as well as Defendants' attorneys, agents, insurers, the attorneys representing Defendants in this case, the Judge(s) to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, and all persons who previously released any claims encompassed in this Settlement.

4.    The Court hereby re-affirms this definition for purposes of this Final Approval Order.

5.    The Court certifies the Settlement Class in this Action, for settlement purposes only, and in so doing, finds that, for settlement purposes only, the requirements for maintaining a class action, at the settlement stage, have been met.

6.    The Class Representatives have entered into the Agreement which has been filed with the Court. The Agreement for the Settlement of this Action with Defendants on behalf of the Class Representatives and the Settlement Class Members, is subject to approval by the Court of its terms. The Court scheduled a hearing to consider the approval of the Settlement and directed that the Notices be disseminated in accordance with the terms of the Preliminary Approval Order.

7.    In accordance with the terms of the Settlement and Preliminary Approval Order, the Parties implemented the Notice Plan approved by the Court. Defendants' counsel and Class Counsel have confirmed to the Court that the Parties complied with the Notice Plan.

8.    The Court hereby finds that the Notice Plan and Settlement Class Notice constituted the best notice practicable under the circumstances, and constituted valid, due and sufficient notice to members of the Settlement Class.

9.    The Class Representatives and Defendants have applied to the Court for final approval of the terms of the Settlement and for entry of this Final Approval Order.  Pursuant to the Settlement Class Notice, a hearing was held before this Court on December 19, 2023, to determine whether the Proposed Settlement of the Action should be finally approved as fair, reasonable, and adequate, and whether the Final Approval Order approving the Settlement and dismissing all claims in the Action, with prejudice and without leave to amend, should be entered.  Plaintiffs and all Settlement Class Members, and any person acting on their behalf are barred from filing, commencing, prosecuting, intervening in or participating in (as class members or otherwise), or receiving any benefits or other relief from any other lawsuit, in any state or federal court, arbitration or administrative, regulatory or other proceeding or order in any jurisdiction based on the Released Claims, as defined in the Agreement.

10.    The Court hereby finds that approval of the Agreement and Settlement embodied therein will result in substantial savings of time and money to the Court and the litigants and will further the interests of justice.

11.    The Court hereby finds that the Settlement is the result of good faith arm's-length negotiations by the Parties thereto.

12.    The Court hereby finds that the terms of the Settlement are fair, reasonable, and adequate.

NOW THEREFORE, IT IS ORDERED AS FOLLOWS:

13.    The Court possesses jurisdiction over the subject matter of this Action, the Class Representatives, the Settlement Class Members, and the Defendants.

14.    The one (1) valid exclusion request shall not be considered a member of the Settlement Class or bound by the Release in the Settlement Agreement and may not receive any benefits of the Settlement.  All remaining Settlement Class Members shall be bound by this Final Approval Order and by the Agreement.  No objections to the Settlement were made.

15.    All provisions and terms of the Settlement are hereby found to be fair, reasonable and adequate as to the Settlement Class Members and the Class Representatives, and all provision and terms of the Settlement are hereby finally approved in all respects.

16.    The Parties are hereby directed to consummate the Settlement in accordance with its terms.

17.    Within ten (10) days of the Effective Date, the Claims Administrator, Carroll Services, LLC, shall establish a Settlement Account, which shall be treated as a Qualified Settlement Fund, for purposes of administering monetary relief under the Settlement, and will provide Class Counsel and Defendants' counsel with any information relating to the Settlement Account that is reasonably necessary for Defendants to fund the Settlement Account, including, but not limited to, a properly executed W-9.

18.    Within fifteen (15) days of the Effective Date, and upon receipt of a properly executed Form W-9 for the Settlement Account, Defendants will deposit the Settlement Amount into the Settlement Account.

19.    Within thirty (30) days after the Effective Date, the Claims Administrator will commence issuing payments, in the form of checks, to Settlement Class Members for the approved Settlement Claims.  If checks are returned as undeliverable with a forwarding address, the Claims

Administrator will re-mail the checks to the forwarding address. If checks are returned without a forwarding address, the Claims Administrator may perform an electronic search to attempt to locate updated addresses and, if identified, the Claims Administrator will re-mail checks to the updated addresses.

20.     Where a Settlement Class Member is deceased and payment is due to that Settlement Class Member pursuant to the Settlement Agreement, payment may be made to such Settlement Class Member's Legally Authorized Representative. Where a Settlement Class Member has been declared bankrupt, or is the subject of an open and ongoing bankruptcy proceeding, and a payment is due to the Settlement Class Member, upon receipt of proper notification and documentation submitted by the Settlement Class Member, payment will be made to the bankruptcy trustee, the Settlement Class Member, or otherwise directed in accordance with applicable United States Bankruptcy Code law.

21.     Each Settlement Class Member shall have one hundred twenty (120) days from the date which appears on the face of the check issued to them to negotiate the payment for their Settlement Claim. Any funds remaining in the Settlement Account after each Settlement Class Member's 120-day deadline for negotiating their settlement checks has passed, the Claims Administrator shall retain such funds in the Settlement Account for a period of ten (10) days after the last 120-day deadline has passed to allow for the processing and payment of any checks that may still be in the bank's check clearing process. Thereafter, the Claims Administrator shall close out the Settlement Account and issue a check for any remaining balance as a *cy pres* award to NRG Oncology Foundation, Inc.

22.     This Final Approval Order is a final order in the Action within the meaning of and for purposes of Rules 23(e), 41, and 54 of the Federal Rules of Civil Procedure as to all claims

among Defendants on the one hand, the Class Representatives and all Settlement Class Members, on the other, and there is no just reason to delay enforcement or appeal. Without in any way affecting the finality of this Final Approval Order, this Court shall retain continuing jurisdiction over this Action for purposes of:

      a.      Enforcing this Final Approval Order, the Agreement and the Settlement;

      b.      Hearing and determining any application by any Party to the Settlement for a settlement bar order; and

      c.      Any other matters related or ancillary to any of the foregoing.

IT IS SO ORDERED this _____ day of _____2023.


_____
United States District Court Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL MOLLOY and<br>JACQUELINE MOLLOY, on behalf of<br>themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>   v.<br><br>AETNA LIFE INSURANCE COMPANY and<br>AETNA INC.,<br><br>      Defendants. | Civil Action<br><br>No. 19-CV-03902 |

## PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

Plaintiffs, Paul and Jaqueline Molloy, husband and wife, on behalf of themselves and all others similarly situated, by and through their attorneys, First Law Strategy Group, LLC and Richard M. Ochroch & Associates, P.C., hereby submit this Unopposed Motion for Final Approval of Class Action Settlement, and incorporate by reference their Memorandum of Law, as though set forth at length herein.

Defendants do not oppose this Motion. *See* E.D. Pa. L.R. 7.1.

WHEREFORE, for the reasons set forth in the accompanying Memorandum of Law, Plaintiffs respectfully request that this Honorable Court:

     a.    Enter the attached Proposed Order;

     b.    Grant final approval of the Parties' Settlement Agreement; and

     c.    Provide any other relief deemed just and proper.

Respectfully submitted,

DATED: NOVEMBER 20, 2023

BY: _David S. Senoff_____

FIRST LAW STRATEGY GROUP, LLC
David S. Senoff, Esquire
Attorney I.D. No. 65278
121 S. Broad Street, Suite 300
Philadelphia, PA 19107
Phone: (215) 258-4700
Facsimile: (215) 258-4777
dsenoff@firstlawstrategy.com

RICHARD M. OCHROCH & ASSOCIATES, P.C.
Richard Ochroch, Esquire
Brett N. Benton, Esquire
Andrew R. Ochroch, Esquire
Attorney I.D. Nos. 21432 / 93267 / 315797
318 South 16th Street
Philadelphia, PA 19102
Facsimile: (215) 893-4209
bbenton@ochroch-law.com
rochroch@ochroch-law.com
aochroch@ochroch-law.com

Attorneys for Plaintiffs and the Settlement Class

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL MOLLOY and<br>JACQUELINE MOLLOY, on behalf of<br>themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AETNA LIFE INSURANCE COMPANY and<br>AETNA INC.,<br><br>        Defendants. | Civil Action<br><br>No. 19-CV-03902 |

**PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

## <u>TABLE OF CONTENTS</u>

**Page**

TABLE OF AUTHORITIES ................................................................................................ iv

EXHIBIT INDEX ......................................................................................................... viii

I.     INTRODUCTION ................................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND ........................................... 3

III.   THE PROPOSED SETTLEMENT ..................................................................... 5

     A.    The Settlement Class ............................................................................... 5

     B.    Benefits to Class Members ...................................................................... 6

     C.    Settlement Class Notice and Administration ........................................... 7

     D.    Class Counsel Fees and Expenses and Class Representative Service Payments ..... 9

     E.    Release .................................................................................................. 10

     F.    Objections and Opt-Outs ....................................................................... 10

IV.   ARGUMENT .................................................................................................... 10

     A.    Legal Standard ...................................................................................... 10

     B.    Presumption of Fairness ........................................................................ 12

     C.    Final Approval of the Settlement Should be Granted .............................. 13

          1.    *Girsh* Factor No. 1: Complexity, Expense, and Likely Duration of the Litigation ....................................................................... 13

          2.    *Girsh* Factor No. 2: Reaction of the Class to the Settlement ...................... 14

          3.    *Girsh* Factor No. 3: Stage of the Proceedings and Amount of Discovery . 15

          4.    *Girsh* Factor Nos. 4 & 5: Risk of Establishing Liability and Damages ..... 16

          5.    *Girsh* Factor No. 6: Risk of Maintaining the Class Action Through Trial ................................................................................ 17

6.    *Girsh* Factor No. 7: ALIC's Ability to Withstand a Greater Judgment ...... 18

7.    *Girsh* Factors Nos. 8 & 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks ............... 18

8.    Permissive Factors ......................................................................................... 21

    a.    *Prudential* Factor No. 4: Whether Class Members are Accorded the Right to Opt Out of the Settlement ..................................................... 21

    b.    *Prudential* Factor No. 5: Whether any Provisions for Attorneys' Fees are Reasonable ............................................................................ 22

    c.    *Prudential* Factor No. 6: Whether the Procedure for Processing Individual Claims Under the Settlement is Fair and Reasonable ............................................................................................................ 22

9.    The Degree of Direct Benefit Provided to the Class .................................... 23

    a.    The Settlement Provides Significant Direct Benefit to Class Members .................................................................................................. 23

    b.    The Amount of the *Cy Pres* is Appropriate ....................................... 24

    c.    NRG Oncology is an Appropriate *Cy Pres* Recipient for the Settlement ............................................................................................. 27

10.   Copy of the Settlement Agreement ............................................................... 29

11.   The Settlement Treats Each Respective Settlement Class Member Equitably ......................................................................................................................... 29

D.    The Court Should Confirm Certification of the Settlement Class ........................... 30

1.    The Settlement Class is Sufficiently Numerous ........................................... 31

2.    The Settlement Class Seeks Resolution of Common Questions .................. 31

3.    The Claims of the Named Plaintiffs are Typical of the Settlement Class Members .......................................................................................................... 32

4.    Class Counsel and Plaintiffs Satisfy the Adequacy Requirements ............. 32

5.    The Settlement Class Satisfies the Predominance and Superiority Requirements of Federal Rule of Civil Procedure 23(b)(3) ...................... 33

      6.     The Settlement Class is Ascertainable..............................................33

   E.    The Notice to the Settlement Class Members Satisfied Due Process ....................34

V.   CONCLUSION ....................................................................................................................35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997)..................................................................................30

*Byrd v. Aaron's Inc.*,
784 F.3d 154 (3d Cir. 2015) ....................................................................33

*Cullen v. Whitman Med. Corp.*,
197 F.R.D. 136 (E.D. Pa. 2000).........................................................20, 26

*Diamond Chem. Co. v. Akzo Nobel Chem. B.V.*,
517 F. Supp. 2d 212 (D.D.C. 2007) ........................................................25

*Esslinger v. HSBC Bank Nev.*, N.A.
2012 WL 5866074 (E.D. Pa. Nov. 20, 2012)..........................................20

*Girsh v. Jepson*,
521 F.2d 153 (3d Cir. 1975) ...........................................................*passim*

*Glaberson v. Comcast Corp.*,
2014 WL 7008539 (E.D. Pa. Dec. 12, 2014)...........................................34

*Hassine v. Jeffes*,
846 F.2d 169 (3d Cir. 1988) ....................................................................32

*In re Baby Prod. Antitrust Litig.*,
708 F.3d 163 (3d. Cir. 2013) ..............................................12, 23, 24, 25

*In re Cendant Corp. Sec. Litig.*,
404 F.3d 173 (3d Cir. 2005) ....................................................................13

*In re Corel Corp. Sec. Litig.*,
293 F. Supp. 2d 484 (E.D. Pa. 2003) .................................................20, 34

*In re Dep't of Veterans Affairs Data Theft Litig.*,
653 F. Supp. 2d 58 (D.D.C. 2009) ..........................................................25

*In re Diet Drugs*,
2000 WL 1222042 (E.D. Pa. Aug. 28, 2000)..........................................17

*In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*,
55 F.3d 768 (3d Cir. 1995) .............................................................*passim*

*In re Google Cookie Placement Consumer Priv. Litig.*,
    934 F.3d 316 (3d Cir. 2019) ...................................................................................34

*In re Ikon Office Solutions, Inc. Sec. Litig.*,
    194 F.R.D. 166 (E.D. Pa. 2000) ..............................................................................34

*In re LivingSocial Marketing & Sales Prac. Litig.*,
    298 F.R.D. 1 (D.D.C. 2013) ........................................................................24, 25, 26

*In re Nat'l Football League Players Concussion Injury Litig.*,
    307 F.R.D. 351 (E.D. Pa. 2015) ........................................................................*passim*

*In re Nat'l Football League Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016) ...................................................................................32

*In re Pet Food Prods. Liab. Litig.*,
    2008 WL 4937632 (D.N.J. Nov. 18, 2008) ............................................................21

*In re Pet Food Prods. Liab. Litig.*,
    629 F.3d 333 (3d Cir. 2010) ...................................................................................21

*In re Prudential Ins. Co. of Am. Sales Pract. Litig.*,
    148 F.3d 283 (3d Cir. 1998) ............................................................................*passim*

*In re Rent-Way Sec. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003) ....................................................................21

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ................................................................ 10, 17, 18, 30

*Jackson v. Wells Fargo Bank, N.A.*,
    136 F. Supp. 3d 687 (W.D. Pa. 2015) ....................................................................14

*Mehling v. New York Life Ins. Co.*,
    248 F.R.D. 455 (E.D. Pa. 2008) ..................................................................19, 26, 34

*Mullane v. Cent. Hanover Bank & Trust Co.*,
    339 U.S. 306 (1950) ...............................................................................................34

*Perry v. FleetBoston Fin. Corp.*,
    229 F.R.D. 105 (E.D. Pa. 2005) .............................................................................16

*Radosti v. Envision EMI, LLC*,
    760 F. Supp. 2d 73 (D.D.C. 2011) .........................................................................25

*Reed v. Gen. Motors Corp.*,
    703 F. 2d 170 (5th Cir. 1983) ....................................................................21

*Reibstein v. Rite Aid Corp.*,
    761 F. Supp. 2d 241 (E.D. Pa. 2011) ......................................................18

*Rodriguez v. Nat'l City Bank*,
    726 F.3d 372 (3d Cir. 2013) ....................................................................30

*Stewart v. Abraham*,
    275 F.3d 220 (3d Cir. 2001) ....................................................................31

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2010) ....................................................................18

*Vista Healthplan, Inc. v. Cephalon Inc.*,
    2020 WL 1922902 (E.D. Pa. Apr. 21, 2020) ......................................19, 26

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ................................................................................31

*Zenith Labs., Inc., v. Carter-Wallace, Inc.*,
    530 F.2d 508 (3d Cir. 1976) ....................................................................17

**Statutes, Regulations, Rules**

E.D. Pa. L.R. 7.1 ....................................................................................................2

2 C.F.R. § 200.501(a) ...........................................................................................28

2 C.F.R. 200.516(a) ..............................................................................................28

Employee Retirement Income Security Act of 1974,
    29 U.S.C. § 1001, *et seq.* (ERISA) ................................................*passim*

29 U.S.C. § 1132(a)(3) ..........................................................................................17

Fed. R. Civ. P. 12(b)(6) ..........................................................................................4

Fed. R. Civ. P. 23 .......................................................................................2, 30, 33

Fed. R. Civ. P. 23(a) .............................................................................................30

Fed. R. Civ. P. 23(a)(1) .........................................................................................31

Fed. R. Civ. P. 23(a)(2) .........................................................................................31

Fed. R. Civ. P. 23(a)(3) .................................................................................................. 32

Fed. R. Civ. P. 23(a)(4) .................................................................................................. 32

Fed. R. Civ. P. 23(b)(3) ............................................................................................ 30, 33

Fed. R. Civ. P. 23(e) ................................................................................................ 10, 29

Fed. R. Civ. P. 23(e)(1)(B)(i) ........................................................................................ 10

Fed. R. Civ. P. 23(e)(1)(B)(ii) ....................................................................................... 12

Fed. R. Civ. P. 23(e)(2)(A)-(D) ..................................................................................... 11

Fed. R. Civ. P. 23(e)(2)(C)(iv) ...................................................................................... 29

Fed. R. Civ. P. 23(e)(2)(D) ............................................................................................ 29

Fed. R. Civ. P. 23(e)(3) .................................................................................................. 11

**Other Authorities**

FTC, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS (2019) ........................................................................................................ 14

MANUAL FOR COMPLEX LITIGATION (FOURTH) § 21.632 (2004) ........................................ 10

**EXHIBIT INDEX**

| EXHIBIT | DOCUMENT |
|:---:|:---|
| **1** | Settlement Agreement and Release |
| **2** | Decl. of D. Senoff in Support of Pls.' Unopposed Mot. for Final Approval of Settlement |
| **3** | Settlement Claim Form |
| **4** | Affidavit of Carroll Services, LLC, Claims Administrator |
| **5** | Settlement Class Notice |

Plaintiffs, Paul and Jacqueline Molloy, husband and wife, ("Paul" and "Jacqueline," respectively, and collectively "Plaintiffs"), on behalf of themselves and all others similarly situated, by and through their attorneys, First Law Strategy Group, LLC and Richard M. Ochroch & Associates, P.C., hereby present this Memorandum of Law in Support of their Unopposed Motion for Final Approval of Class Action Settlement.[1]

## I.    **INTRODUCTION**

The Parties have reached a settlement of this class action.  *See* Settlement Agreement and Release, attached as Exhibit "1" (hereinafter referred to as "Settlement Agreement" and cited as "SA").  On July 12, 2023, the Court granted preliminary approval of the Settlement and appointed Carroll Services, LLC ("Carroll Services") as the Claims Administrator.  [ECF 59].  Since that time, the parties, through Carroll Services, provided notice to the Settlement Class Members, the ***majority (53.23%)*** of whom submitted claims forms seeking to participate in the Settlement. Plaintiffs now seek final approval of the Settlement.

This settlement represents an exemplary result for the Settlement Class of claims that were vigorously contested by Defendants, and that faced significant uncertainties both at class certification and at trial.  The Parties engaged in numerous arm's-length negotiations over an extended period of time.  Ultimately, the Parties' good-faith efforts to resolve this litigation resulted in a settlement representing a thoughtful compromise, which takes into consideration the Parties' respective concerns, together with substantial guaranteed payments to the 139 individual Settlement Class Members in the minimum amount of $10,000 each, and as high as $24,000 each.

The Settlement Class consists of all members, participants, or beneficiaries of an ERISA sponsored health plan administered and/or insured by Defendant, Aetna Life Insurance Company

---

[1] This Memorandum of Law incorporates by reference the defined terms of the Settlement Agreement.

("ALIC") who between June 1, 2017 and October 9, 2020: (1) had a request for coverage of Proton Beam Therapy ("PBT") denied; (2) were diagnosed with a type of head, neck, or brain cancer identified in the October 2020 version of Clinical Policy Bulletin No. 0270 concerning PBT ("CPB No. 0270"); and (3) did not receive coverage under their ERISA plan for intensity-modulated radiation therapy.  SA pp. 4-5, ¶ 1.D, attached as Exhibit "1."  This is a claims-made settlement. Class Counsel and Defendants have determined that there are 139 Settlement Class Members.[2] Accordingly, the Settlement provides for potential direct payments to the Settlement Class Members totaling $3,408,000.

Class Counsel respectfully submits that the Settlement is fair, reasonable, adequate, and in the best interests of Plaintiffs and the Settlement Class Members.  Class Counsel respectfully requests that the Court:

> a. Grant final approval of the proposed Settlement and enter the attached proposed Order;
>
> b. Grant final certification of the Settlement Class under Fed. R. Civ. P. 23; and
>
> c. Approve distribution of the Settlement Funds to the Settlement Class Members that submitted Valid Claim Forms or rehabilitated Claim Forms.

Defendants do not oppose this Motion.[3]  *See* E.D. Pa. L.R. 7.1.

---

[2] Previously, ALIC identified 142 potential Settlement Class Members.  Upon verifying the members of the Settlement Class, ALIC discovered two of those potential Settlement Class Members ended up receiving PBT treatment covered by ALIC.  Further, one Settlement Class Member on the verified Class List provided by ALIC was listed twice.  *See* Decl. of D. Senoff in Support of Pls.' Unopposed Mot. for Final Approval of Settlement ¶ 45, attached as Exhibit "2" (hereinafter cited as "D. Senoff Decl.").  As a result, there are 139 individual Settlement Class Members.

[3] Defendants deny liability with respect to the matters alleged in this Action, including that the case could be properly certified as a litigation class action as opposed to a class action for settlement purposes only.  Defendants entered into the Settlement as a compromise of disputed claims and for the purpose of avoiding the uncertainty, costs, and delay of continued litigation, and retain all rights to assert that this Action should not be certified as a class action should final approval of the proposed settlement not be granted.  SA pp. 2-3; *id.* p. 15, ¶¶ 2.A.vi, vii, attached as Exhibit "1." *See also id.* pp. 36-37, ¶ 24.  Although Defendants do not oppose the instant Motion, all statements in the Motion and this Memorandum are being made by Plaintiffs, not Defendants, and nothing herein constitutes an admission by Defendants with respect to anything related to this matter.

II.    **FACTUAL AND PROCEDURAL BACKGROUND**

In May 2017, Plaintiff Paul Molloy was diagnosed with a brain tumor (specifically, an oligodendroglioma) in his right temporal lobe. (First Am. Compl. ¶ 35.) On June 19, 2017, Paul underwent a craniotomy (*i.e.*, brain surgery) of his right temporal lobe at the Hospital of the University of Pennsylvania, which was successful in removing approximately 80% of his tumor. (*Id.* ¶ 37.) Following that surgery, his surgical team and his physician, Dr. Robert Lustig (professor of Clinical Radiation Oncology of the Perelman School of Medicine at the University of Pennsylvania and a board-certified therapeutic radiologist at the Hospital of the University of Pennsylvania), recommended that Paul receive post-operative radiation with PBT. (*Id.* ¶¶ 13 n.3, 38; *see also id.* Ex. "B" at 1.) PBT is a type of external beam radiation therapy that utilizes protons (positively charged subatomic particles) that are targeted to a specific tissue mass. This is due to the precise delivery of the accelerated particles from the Proton Beam. (*See id.* ¶ 39.)

Prior to May 2017, Plaintiff Jacqueline Molloy was (and currently is) employed by Vanguard Group, Inc. As a benefit of her employment with Vanguard, at all times relevant hereto, Jacqueline was entitled to, and did, participate in Vanguard's Employee Welfare Benefit Fund known as the "Choice POS II with Aetna Health Fund Benefit Plan" (hereinafter, the "Plan"). Due to the fact that Plaintiff Paul Molloy was and continues to be married to Plaintiff Jacqueline Molloy, Paul was (and continues to be) a Beneficiary of the Plan.

ALIC denied Paul's pre-certification request for PBT. (*See generally id.* ¶¶ 47-77 (pre-certification denials).) As a result, Paul self-paid for his PBT treatment. (*Id.* ¶ 78.) Paul subsequently submitted post-service claims, which ALIC denied. (*See generally id.* ¶¶ 78-95 (post-service denials).)

On August 19, 2019, Plaintiffs commenced this case by filing a Class Action Complaint against Defendants, on behalf of members, participants and beneficiaries of ERISA-governed plans administered by ALIC who were denied coverage for PBT.  [ECF 1].  On November 15, 2019, Defendants filed a Motion to Dismiss Plaintiffs' Complaint contending the Complaint was impermissibly vague, and further, that the original Complaint failed to place Defendants on notice of the claims against them, thus inhibiting their ability to prepare a defense.  [ECF 21].

On December 13, 2019, Plaintiffs filed their Amended Class Action Complaint.  [ECF 23]. On January 6, 2020, Defendants filed a Motion to Dismiss the First Amended Class Action Complaint pursuant to Fed. R. Civ. P. 12(b)(6) alleging that Plaintiffs' Amended Class Action Complaint failed to state a claim upon which relief can be granted.  [ECF 26].  Plaintiffs filed their response in opposition to this motion on January 28, 2020.  [ECF 28].  On February 11, 2020, Defendants filed a reply in further support of their motion.  [ECF 29].  Subsequently, Defendants filed a notice of supplemental authority on April 14, 2020 [ECF 33], to which Plaintiffs filed a response on April 22, 2020 [ECF 34].

In and around October 2020, CPB No. 0270 was revised as to the scope of cancer types for which PBT would be considered medically necessary.  SA Ex. "A" at pp. 1-2, attached as Exhibit "1."  The revisions to CPB No. 0270 included, among other things, removing Oligodendroglioma from the list of "indications" for which PBT was "consider[ed] experimental and investigational for . . . adults (over age 21) . . . ."  *Id.* pp. 2-3.

On October 13, 2020, the Parties jointly requested the Court to defer ruling on Defendants' Motion to Dismiss the First Amended Complaint while the Parties explored the possibility of settling this matter.  In light of the Parties' efforts to reach a settlement, on June 1, 2021, the Court transferred this case to the Civil Suspense File, until further Order of this Court.  [ECF 49].

Following extended negotiations, which took place throughout the remainder of 2020, 2021, and the first half of 2022, in June 2022, the Parties agreed in principle to settlement of Plaintiffs' claims on behalf of the Settlement Class, and over the course of the next several months continued to negotiate, draft, and finalize the Settlement Agreement ultimately executed on December 12, 2022.[4]  *See* D. Senoff Decl., ¶¶ 24-32, attached as Exhibit "2."

On March 3, 2023, Class Counsel filed Plaintiffs' Unopposed Motion for Preliminary Approval of the Settlement, which the Court granted on July 12, 2023.  [ECF 57; ECF 59].

## III.    **THE PROPOSED SETTLEMENT**

### A.    **The Settlement Class**

The Settlement Class comprises:

> All members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by ALIC, who themselves, or who, as a subscriber, had a beneficiary covered by their benefits plan, who:
> - o Had a denied PBT benefit claim and/or denied PBT precertification request, for which either the claim was incurred, or the request was submitted, between June 1, 2017 and October 9, 2020 ("Class Period"); and
> - o Had a diagnosis code for head, neck, or brain cancer within the list of codes covered under Section 1 of the October 2020 revision to Clinical Policy Bulletin No. 0270 (a copy of which is attached to the Settlement Agreement as Exhibit A); and
> - o Did not have benefit claims for intensity-modulated radiation therapy paid or adjudicated as paid by ALIC.
> - o The following persons are excluded from the Class: all individuals under the age of 21 at the time the claim for benefits was incurred or request was submitted; and all individuals covered by a Medicare Advantage plan administered or insured by ALIC.  Also excluded from this definition are Defendants, as well as Defendants' attorneys,

---

[4] To be sure, part of the time spent negotiating the settlement was due to delays occasioned by the COVID-19 pandemic.  The pandemic delayed receipt of certain discovery responses from ALIC that were integral to Plaintiffs' ability to retain an expert and to confirm the economic terms of the proposed agreement.  This delay was in no way caused by or intentional on the part of Defendants or their counsel, as much of the information requested and ultimately produced had to be retrieved manually from written records and documents stored in various locations.

agents, insurers, the attorneys representing Defendants in this case, the Judge(s) to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, and all persons who previously released any claims encompassed in this Settlement.

SA pp. 4-5, ¶ 1.D, attached as Exhibit "1." (*See also* Prelim. Approval Order ¶ 18.)

## B. <u>Benefits to Class Members</u>

Each Settlement Class Member who timely submitted a valid Settlement Claim Form shall be entitled to a minimum guaranteed payment of $10,000. *See* SA p. 16, ¶ 3.A, attached as Exhibit "1." The Settlement also afforded each Settlement Class Member the opportunity to submit a claim to receive up to $24,000 (inclusive of the $10,000 minimum guaranteed payment). *See id.* p. 9, ¶ 1.H.; *id.* p. 16, ¶ 3.B.

In order to receive more than the $10,000 minimum, guaranteed payment, the Settlement required a Settlement Class Member to submit sufficient Proof of Payment or Proof of Indebtedness for their receipt of PBT treatment. *See id.* p. 18, ¶ 4. Said Proof of Payment or Proof of Indebtedness was to be submitted with their Settlement Claim Form demonstrating that any claim for an amount in excess of $10,000 was paid, is payable, or remains owed, in connection with their receipt of PBT treatment. *See id.* Proof of Payment includes, but is not limited to: receipts showing payment for PBT treatment from a hospital, treatment center, or physician; cancelled checks; credit card records; notarized affidavits or notarized sworn statements from the individual who made such payment (or an authorized representative of such individual or his or her estate); or any other proof of payment for PBT treatment, including documentation from ALIC itself, if any. *See id.* Proof of Indebtedness includes, but is not limited to: loan documentation; collection notices; demands for payment on unpaid bills; notarized affidavits or notarized sworn statements from the individual who incurred such debt (or an authorized representative of such

individual or his or her estate); or self-pay agreements with a medical care provider that administered the PBT treatment.  *See id.*  As both the Proof of Payment and Proof of Indebtedness permit substantiation by way of notarized affidavit, the Settlement Class Members were afforded the opportunity to submit a claim for more than $10,000, without possessing any additional documentation.  *See id.*  In fact, the Settlement Claim Form provided the Settlement Class Members with the space necessary to submit a sworn statement within the form itself.  *See* Settlement Claim Form, attached as Exhibit "3."

Accordingly, the amount of the settlement funds to which ALIC has committed to paying to the Settlement Class Members totals $3,408,000.  This amount was based on the 142 potential Settlement Class Members that ALIC identified at the time of Settlement[5] qualified for the maximum payment of $24,000 (*i.e.*, 142 * $24,000 = $3,408,000).

To the extent any portion of the $3,408,000 in settlement funds goes unclaimed by the Settlement Class Members, that amount will be the subject of a *cy pres* award to NRG Oncology Foundation, Inc. ("NRG Oncology") (or any other *cy pres* recipient the Court may approve).  SA p. 17, ¶ 3.E, attached as Exhibit "1."  "There will be no reversion of any funds to Defendants."  *Id.*

C. <u>**Settlement Class Notice and Administration**</u>

The efforts undertaken to provide notice to the Settlement Class Members were wildly successful.  Out of the 139 Settlement Class Members, 74[6] completed and timely submitted Settlement Claim Forms seeking to participate in the settlement – *a participation rate of 53.23%*.

---

[5] *See* fn. 2 *supra*.

[6] One additional Settlement Class Member recently submitted a claim that is still being reviewed by the Claims Administrator.  In the event the Claims Administrator determines this Settlement Class Member should receive a payment under the Settlement, Class Counsel will notify the Court in advance of the December 19, 2023 final approval hearing of any changes in the participation rate and distribution amounts.

*See* Affidavit of Carroll Services, LLC, Claims Administrator, ¶¶ 15-16, attached as Exhibit "4" (hereinafter cited as "Carroll Aff.").

As directed in the Preliminary Approval Order, ALIC provided Class Counsel with the Class List, along with a verification that the list was both accurate and complete to the best of ALIC's knowledge. D. Senoff Decl., ¶ 44, attached as Exhibit "2." The information on the Class List included names, last known addresses, phone numbers, and email addresses, where known, for the 139 Settlement Class Members previously identified during discovery. D. Senoff Decl., ¶ 46, attached as Exhibit "2."

On August 7, 2023, Carroll Services issued the initial mailing of the Settlement Class Notice and Claim Form to each Settlement Class Member. Carroll Aff., ¶ 6, attached as Exhibit "4." Prior to issuing the Settlement Class Notice and Claim Form to the Settlement Class Members, Carroll Services established a website providing information about the Settlement and access to important documents including the Settlement Agreement, the Preliminary Approval Order, and copies of the Notice and Claim Form. *Id.* ¶ 7. Additionally, Carroll Services established a toll-free phone number at which inquiries by the Settlement Class Members could be made. *Id.* ¶ 8.

Carroll Services re-issued any mailings returned as undeliverable with a forwarding address to the Settlement Class Member's new address. *Id.* ¶ 9; SA pp. 22-23, ¶ 12, attached as Exhibit "1." If mail was returned without a forwarding address, or if a Settlement Class Member failed to return a Settlement Claim Form after approximately three weeks, Carroll Services performed an electronic search to attempt to locate an updated address and phone number for those Settlement Class Members, and re-served the documents to that newly updated address. Carroll Aff., ¶ 10, attached as Exhibit "4."

Additionally, in accordance with the Settlement Agreement, approximately 3 weeks after the initial mailing of the Settlement Class Notice and Claim Form, Class Counsel attempted to contact all Settlement Class Members who had not returned a Claim Form by phone.  D. Senoff Decl., ¶ 52, attached as Exhibit "2;" *see also* SA p. 17 ¶ 3.F.-G., I, attached as Exhibit "1."

It is because of these diligent efforts that more than half (53.23%) of the Settlement Class Members elected to participate in the Settlement.

### D.    Class Counsel Fees and Expenses and Class Representative Service Payments

After agreeing to the principal terms of the Settlement Agreement, including the Settlement Amount, Class Counsel and Defendants' counsel separately negotiated the Class Counsel Fees and Expenses and Class Representative Service Payments that, following application to the Court and subject to Court approval, would be paid by ALIC.  SA pp. 31-32, ¶¶ 17-19, attached as Exhibit "1;" D. Senoff Decl. ¶¶ 38-39, attached as Exhibit "2."

The Settlement Agreement provides Defendants will not contest an award of counsel fees and expenses of up to $1,502,000 (the Class Counsel Fees and Expenses), *inclusive* of the costs of administering the Settlement and Class Representative Service Payments for the Plaintiffs of up to $25,000 each.  SA pp. 31-32, ¶¶ 17-18, attached as Exhibit "1."  These funds are being paid in addition to, and separate and apart from, the payments to be awarded to the Settlement Class Members.  Accordingly, this will not reduce the monetary relief available to the Settlement Class. SA p. 32, ¶ 19, attached as Exhibit "1."  The award of Class Counsel Fees, Expenses and Class Representative Service Payments is the subject of a separate motion filed simultaneously with the Final Approval Motion.

### E.    Release

Pursuant to the Settlement Agreement, and subject to the Court's final approval, the Settlement Class Members who do not opt-out of the proposed settlement will release Defendants and their Affiliated Entities with respect to all Released Claims.  SA pp. 7-8, ¶ 1.Z; 28-31, ¶ 15, attached as Exhibit "1."  The release is not a general policy release.  *Id.* pp. 28-31, ¶ 15.  Other claims for benefits for unrelated diseases or treatment are not impacted by the release contemplated by the Settlement Agreement.  *Id.*

### F.    Objections and Opt-Outs

Only one Settlement Class Member opted-out of the Settlement.  There were no objections to any part of the Settlement.  Carroll Aff., ¶¶ 13-14, attached as Exhibit "4."

## IV.    ARGUMENT

### A.    Legal Standard

"[T]here is an overriding public interest in settling class action litigation, and it should therefore be encouraged."  *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) (citation omitted).  Rule 23(e) requires Court approval of class action settlements and outlines a two-step process by which district courts must first determine whether a proposed class action settlement warrants preliminary approval and then, after notice of the settlement is given to class members, whether final approval is justified.  Fed. R. Civ. P. 23(e); e.g., Manual for Complex Litigation (Fourth) § 21.632 (2004).

First, as to Rule 23(e)(1)(B)(i), final approval is proper upon a finding that the settlement is "fair, reasonable, and adequate" after considering whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:

> (i) the costs, risks, and delay of trial and appeal;
> (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> (iv) any agreement required to be identified under Rule 23(e)(3); and
>
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2)(A)-(D).  The Third Circuit set forth 9 factors (commonly referred to as the

*Girsh* factors) that the Court must consider when determining the reasonableness of a settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh v. Jepson*, 521 F.2d 153, 156-157 (3d Cir. 1975) (ellipses and citation omitted).  *See also In*

*re Nat'l Football League Players Concussion Injury Litig.*, 307 F.R.D. 351, 388 (E.D. Pa. 2015)

("*NFL Players*").  The Third Circuit also has identified 6 permissive factors to consider (the

*Prudential* factors):

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*NFL Players*, 307, F.R.D. at 395-396 (quoting *In re Prudential Ins. Co. of Am. Sales Pract. Litig.*, 148 F.3d 283, 323-324 (3d Cir. 1998)). However, not all of the permissive *Prudential* factors are applicable or relevant to each settlement. *E.g.*, *Prudential*, 148 F.3d at 323-324. In addition to the *Girsh* and *Prudential* factors, courts consider "the degree of direct benefit provided to the provided to the class." *In re Baby Prod. Antitrust Litig.*, 708 F.3d 163, 174 (3d. Cir. 2013).

Second, as explained in Section IV.D below, the Settlement Class also meets the criteria for certification of a settlement class, including all aspects of numerosity, commonality, typicality, adequacy, and predominance. The requirement under Rule 23(e)(1)(B)(ii) is therefore met as well.

B.    **Presumption of Fairness**

A class settlement is entitled to an "initial presumption of fairness when the court finds that: (1) the negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected." *In re Gen. Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995) (citation omitted) ("*GM Trucks*").

Here, settlement negotiations were conducted at arm's length and occurred over an extended period of time – beginning in October 2020 (soon after CPB No. 0270 was revised to remove certain head, neck, and brain cancers from the list of "indications" for which PBT was "consider[ed] experimental and investigational for") and not concluding until December 12, 2022, when the parties executed the Settlement Agreement. D. Senoff Decl., ¶¶ 24-32, attached as Exhibit "2." During this time, Class Counsel obtained substantial information concerning the size and details of the prospective class, as well as information concerning the costs associated with PBT claims. *Id.* ¶ 29. The receipt of this information allowed Class Counsel to make informed decisions in the settlement negotiations with Defendants. *Id.* ¶ 30. Class Counsel are experienced

in both insurance coverage litigation and class actions. *Id.* ¶¶ 2, 7, 57. Lastly, no Settlement Class Members objected to the Settlement. Carroll Aff., ¶ 13, attached as Exhibit "4." In fact, the majority of the Settlement Class Members (53.23%) elected to participate in the Settlement and only one Settlement Class Member opted out. *Id.* ¶ 15. Thus, the Settlement is entitled to the initial presumption of fairness. *See GM Trucks*, 55 F.3d at 785.

> C.    **Final Approval of the Settlement Should be Granted**

>> 1.    ***Girsh* Factor No. 1: Complexity, Expense, and Likely Duration of the Litigation**

"This factor captures 'the probable costs, in both time and money, of continued litigation.'" *NFL Players*, 307 F.R.D. at 388 (quoting *GM Trucks*, 55 F.3d at 812; citing *In re Cendant Corp. Sec. Litig.*, 404 F.3d 173 233 (3d Cir. 2005)).

This action presented challenges on standing, class certification and the merits. On two separate occasions, Defendants moved to dismiss Plaintiffs' Complaint and Amended Complaint. The development, implementation, and review of CPB No. 0270, which ALIC used in deciding whether to deny claims for PBT to treat head, neck, and brain cancers for the Settlement Class Members, would take significant time and expense to explore in the absence of the Settlement. Potential exploration of these issues could involve significant scientific inquiry.

It has been more than 6 years since ALIC first denied Paul's pre-certification request for PBT treatment, and more than 4 years since the commencement of this Action. Further, at the time the parties reached the Settlement class certification had not been granted. If Plaintiffs were successful in certifying a class, it is expected that Defendants would appeal. After the appeal, resolution of this Action would require dispositive motions, followed by a possible trial. The trial of this matter would be both costly and long, with expert and fact witness testimony. Upon obtaining any judgment at trial, it is again expected that ALIC would file an appeal further delaying

the litigation, while simultaneously increasing the costs – all the while depriving Settlement Class Members of any relief.

In the absence of the Settlement it is reasonable to believe that, even if successful, the Settlement Class Members would be waiting several years to receive any benefits.  D. Senoff Decl. ¶ 61, attached as Exhibit "2.

## 2. *Girsh* Factor No. 2: Reaction of the Class to the Settlement

"This factor 'attempts to gauge whether members of the class support the settlement' and to use their opinions as a proxy for the settlement's fairness.  Courts look 'to the number and vociferousness of the objectors,' while 'generally assum[ing] that silence constitutes tacit consent to the agreement.'"  *NFL Players*, 307 F.R.D. at 389 (quoting *Prudential*, 148 F.3d at 318; *GM Trucks*, 55 F.3d at 812).

The reaction of the Settlement Class Members has been nothing short of outstanding.  **The majority of the Settlement Class Members (53.23%) have submitted valid Settlement Claim Forms and will receive significant financial payments made available by the Settlement**.  No Settlement Class Members objected to the Settlement, and only one Settlement Class Member opted out.  Carroll Aff., ¶¶ 13-14, attached as Exhibit "4."  This participation rate places the Settlement in the 90th percentile (top 10%) of the Federal Trade Commission's 2019 examination of consumer class action settlements.  FTC, CONSUMERS AND CLASS ACTIONS: A RETROSPECTIVE AND ANALYSIS OF SETTLEMENT CAMPAIGNS p. 21 Table 2 (2019); *id.* at p. 22 (explaining, in Table 2, that "in the top 10% of cases, at least 34% of the recipient pool filed a claim.") *see also id*. p. 11 ("Across all cases in our sample requiring a claims process, the median calculated claims rate was 9% and the weighted mean (i.e., cases weighted by the number of notice recipients) was 4%"); *cf. Jackson v. Wells Fargo Bank, N.A.,* 136 F. Supp. 3d 687, 706 (W.D. Pa. 2015) (noting the

"response rate [of 13%] appears to be fairly high in the area of consumer lending and supports settlement.").

        3.      ***Girsh* Factor No. 3: Stage of the Proceedings and Amount of Discovery**

"This factor 'captures the degree of case development that class counsel [had] accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating.' The aim is to avoid settlement 'at too incipient a stage of the proceedings.'" *NFL Players*, 307 F.R.D. at 390 (quoting *GM Trucks*, 55 F.3d at 810, 813).

The Settlement was the result of contested litigation and theories of liability, the exchange of information, and arm's-length negotiation. The proposed Settlement was reached only after: (1) The sufficiency of Plaintiffs' pleadings was briefed through two separate motions to dismiss filed by Defendants; (2) a review of a significant amount of claims data pertaining to ALIC's handling of PBT claims for the treatment of certain central nervous system, head, and neck cancers; (3) Class Counsels' consultation with a highly qualified expert to ensure the information obtained was properly analyzed and understood; and (4) a lengthy negotiation process that took more than 2 years to conclude. D. Senoff Decl. ¶¶ 12-19, 29, 42, 58, attached as Exhibit "2."

Given the nature of the claims presented, the most crucial component of Class Counsels' investigation required obtaining claims data from ALIC. Specifically, Class Counsel required information concerning PBT pre-certification and claim denials ALIC issued to plan participants and/or their beneficiaries diagnosed with, *inter alia*, the primary central nervous system, head, and neck cancers identified in the October 2020 version of CPB No. 0270. *See* SA Ex. "A," attached as Exhibit "1." Class Counsel subsequently obtained this information from ALIC in May-June 2021. Specifically, the data obtained included all PBT pre-certification and claim information for

any plan participant and/or beneficiary with *at least one* PBT pre-certification or post-service claim denial issued during the Class Period. The information obtained included, among other things: dates of services; claim adjudication dates; unit/treatment counts per claim; procedure codes; amounts billed; amounts allowed; amounts paid; and diagnosis codes. A number of the plan participants and/or beneficiaries with at least one PBT pre-certification or claim denial, had other PBT claims paid by ALIC. The information concerning these paid claims was included in the information obtained by Class Counsel. D. Senoff Decl., ¶ 29, attached as Exhibit "2."

Class Counsel reviewed this extensive data in conjunction with their forensic accounting and economic expert Stephen J. Scherf, CPA/CFF, CFE, who assisted Class Counsel in concluding that the prospective payments to Settlement Class Members were reasonable. Specifically, Mr. Scherf opined based on claims data provided by ALIC that a full course of PBT treatment totaled on average $61,838.08, and the allowed amount for covered PBT treatment ranged between $27,827 and $34,011.[7]

Thus, Class Counsel had an adequate appreciation of the merits of the Action prior to entering into the Settlement, and the Settlement did not occur at an incipient stage of the litigation.

### 4. *Girsh* Factor Nos. 4 & 5: Risk of Establishing Liability and Damages

"The next two *Girsh* factors consider the risks of establishing liability and damages should the case go on to trial. Because these two *Girsh* factors are closely related, they are addressed together. The analysis of these factors 'need not delve into the intricacies of the merits of each side's arguments.'" *NFL Players*, 307 F.R.D. at 391 (quoting *Perry v. FleetBoston Fin. Corp.*,

---

[7] Plaintiffs retained Stephen J. Scherf, CPA/CFF, CFE, to review the terms of the proposed settlement, including by analyzing information ALIC provided during the settlement negotiations and designated as "Confidential." Defendants do not endorse the particulars of the analysis but agree with Mr. Scherf's conclusion that the settlement is fair to the Settlement Class. The report remains available should the Court wish to review. To the extent the report is requested, the parties ask that it be submitted under seal.

229 F.R.D. 105, 115 (E.D. Pa. 2005); citing *In re Diet Drugs*, 2000 WL 1222042, at \*61 (E.D. Pa. Aug. 28, 2000) (acknowledging that "the risks of establishing liability and damages are readily apparent" and "not[ing] several obstacles that [plaintiffs] would have to overcome" to recover).

Defendants contested liability and damages. As made clear in their Motion to Dismiss Plaintiffs' First Amended Complaint, Defendants asserted: (1) PBT was not a covered benefit under the terms of Plaintiffs' health plan; (2) Plaintiffs' claim for breach of fiduciary duty under ERISA's catchall provision, 29 U.S.C. § 1132(a)(3) was impermissible; and (3) the basis of Plaintiffs' breach of fiduciary duty claim, namely the development and implementation of CPB No. 0270, was wholly irrelevant to resolving the Action. (*See* Defs.' Mot. to Dismiss First Am. Compl. at 2-4.) [ECF 26]. At the time the parties reached the Settlement, Defendants' Motion to Dismiss remained pending. While Plaintiffs dispute the validity of Defendants' arguments, the risk posed by their Motion to Dismiss cannot be ignored. Further, assuming Plaintiffs prevailed and Defendants' Motion to Dismiss was denied, the risks of class certification and trial, as well as their attendant appeals, similarly could not be ignored.

### 5. *Girsh* Factor No. 6: Risk of Maintaining the Class Action Through Trial

"This factor 'measures the likelihood of obtaining and keeping a class certification if the action were to proceed to trial.' Because class certification is subject to review and modification at any time during the litigation, the uncertainty of maintain class certification favors settlement." *NFL Players*, 307 F.R.D. at 394 (quoting *Warfarin*, 391 F.3d 357*); citing *Zenith Labs., Inc., v. Carter-Wallace, Inc.*, 530 F.2d 508, 512 (3d Cir. 1976)).

The issue of class certification is an additional element of risk when, like in this case, it has not yet been determined. Even if the Court certified a class, Defendants almost certainly would have appealed. And after an appeal, Plaintiffs would still potentially face efforts by Defendants to

decertify the class.  Through the Settlement, Plaintiffs and the Settlement Class gain significant benefits without having to face further risk.

> **6.**     *Girsh* **Factor No. 7: ALIC's Ability to Withstand a Greater Judgment**

"This factor assesses the ability of defendants to withstand a greater judgment, and is 'most clearly relevant where a settlement in a given case is less than would ordinarily be awarded but the defendant's financial circumstances do not permit a greater settlement.'  However, when there is no 'reason to believe that [d]efendants face any financial instability[,] . . . this factor is largely irrelevant.'"  *NFL Players*, 307 F.R.D. at 394 (quoting *Reibstein v. Rite Aid Corp.*, 761 F. Supp. 2d 241, 254 (E.D. Pa. 2011)).  *See also Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 323 (3d Cir. 2010).  Here, this factor is largely irrelevant as ALIC's financial circumstances did not factor into the parties' settlement negotiations.

> **7.**     *Girsh* **Factors Nos. 8 & 9: Range of Reasonableness of the Settlement Fund in Light of the Best Possible Recovery and All Attendant Risks**

"In evaluating [*Girsh* factors 8 and 9], a Court must ask 'whether the settlement represents a good value for a weak case or a poor value for a strong case.'  Put another way, a court must compare 'the amount of the proposed settlement with 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing.'  The settlement must be judged 'against the realistic, rather than theoretical, potential for recovery after trial.'"  *NFL Players*, 307 F.R.D. at 394-395 (quoting *Warfarin*, 391 F.3d at 538; *GM Trucks*, 55 F.3d at 806; *Sullivan*, 667 F.3d at 323).  "Notably, in conducting the analysis, the court must 'guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.'"  *Sullivan*, 667 F.3d at 324 (quoting *GM Truck*, 55 F.3d at 806).

Here, the benefits available to the Settlement Class Members under *Girsh* total $4,860,000 as follows:

| | |
|---|---|
| Settlement Fund | $3,408,000 |
| Attorneys' Fees and Litigation Expenses (inclusive of Settlement Administration Costs, but excluding the amount of the maximum services awards) | $1,452,000 |
| **TOTAL** | **$4,860,000** |

*See* SA p. 16, ¶ 3.C, p. 31, ¶ 17, attached as Exhibit "1." Accordingly, as the Class List identified 139 Class Member claims, the maximum recovery available at trial would $8,595,493.12.[8] When compared to this amount, the total benefits to the Settlement Class Members secured through the Settlement represent 56.54% of the maximum recovery available.[9]

The recovery secured through the Settlement compares very favorably to class action settlements receiving final approval in this Court.[10] *See, e.g.*, *Vista Healthplan, Inc. v. Cephalon Inc.*, 2020 WL 1922902, at *21-22 (E.D. Pa. Apr. 21, 2020) (granting final approval of class action settlement that was 11.5% of best possible recovery and comparing the settlement to other class action settlements ranging from 8.1% to 19.69% of provable damages); *Mehling v. New York Life Ins. Co.*, 248 F.R.D. 455, 462 (E.D. Pa. 2008) (granting final approval of class action settlement that was approximately 20% of the "best possible recovery") (citing *In re Corel Corp. Sec. Litig.*,

---

[8] 139 Settlement Class Members multiplied by Mr. Scherf's opinion as to the average amount billed for a course of PBT treatment ($61,838.08) = $8,595,493.12.

[9] $4,860,000/$8,595,493.12 = 56.54%.

[10] If Plaintiffs prevailed in certifying a class and at trial, Plaintiffs might have argued as a possible measure of damages to make class members whole by reimbursing them for amounts they paid out of pocket for PBT treatment, which would have been covered if ALIC had approved the claims. Here, the 15 Settlement Class Members who submitted evidence established that they paid and/or owed, on average, $39,927.67 for PBT treatment. From that average, one could estimate that, for the 139 Settlement Class Members, the maximum recovery available at trial would be $5,549,946.13 (139 Settlement Class Members multiplied by the $39,927.67 average amount paid/owed for PBT treatment). The Settlement Amount that was made available to Settlement Class Members through the Settlement represents 61.4% of the estimated maximum recovery available ($3,408,000/$5,549,946.13 = 61.4%).

293 F. Supp. 2d 484, 490 (E.D. Pa. 2003) (approving settlement of 15% of provable damages); *Cullen v. Whitman Med. Corp.*, 197 F.R.D. 136, 144 (E.D. Pa. 2000) (approving final settlement of approximately 17% of damages)).  Even when you exclude the $1,452,000 in attorneys' fees and costs made available pursuant to the terms of the Settlement, the amount made directly available for distribution to the Settlement Class Members still favorably compares the maximum available recovery at trial (39.64%).[11]

Moreover, Plaintiffs' forensic accounting and economic expert analyzed the maximum settlement payment with respect to his opinion regarding the range of allowed amounts for covered treatment.  He opined that the $24,000 maximum settlement payment available under the Settlement represents between 71% and 86% of the range of allowed amounts for a full course of PBT treatment for the Settlement Class Members.[12]  Even comparing the $24,000 maximum settlement payment to Mr. Scherf's opinion regarding the $61,838.08 average total billed amount for a course of PBT treatment, the Settlement represents a recovery of 38.8% of this amount.  *Id.*

"[W]hile the exact maximum possible recovery in this case may be unclear, the extensive risks of litigation are not."  *Esslinger v. HSBC Bank Nev.*, N.A. 2012 WL 5866074, at *10 (E.D. Pa. Nov. 20, 2012).  Here, Defendants disputed the merits of Plaintiffs' claims.  (*See, e.g.*, Defs.' Mot. to Dismiss Am. Compl.) [ECF 26].  The Settlement Class was at risk of receiving nothing if Defendants prevailed.  When the Settlement is considered in light of the best possible recovery and in light of all the attendant risks of litigation, the Settlement is clearly within a "range of reasonableness."

---

[11] $3,408,000/$8,595,493.12 = 39.64%

[12] $24,000/$34,011 = 71% and $24,000/$27,827 = 86%.

Lastly, Courts are to give considerable weight to the experience of the attorneys who litigated the case and participated in settlement negotiations. *See, e.g.*, *In re Rent-Way Sec. Litig.*, 305 F. Supp. 2d 491, 509 (W.D. Pa. 2003) ("[S]ettlement negotiations took place at arm's-length between highly experience[d] and competent counsel. Their assessment of the settlement as fair and reasonable is entitled to considerable weight."); *Reed v. Gen. Motors Corp.*, 703 F. 2d 170, 175 (5th Cir. 1983) ("[T]he value of the assessment of able counsel negotiation at arm's-length cannot be gainsaid. Lawyers know their strengths and they know where the bones are buried."). Class Counsel are aware of the legal challenges Plaintiffs' claims face, and the difficulties that would be encountered in bringing this case to verdict. This Settlement represents an exemplary result for the Settlement Class of this vigorously contested matter. D. Senoff Decl., ¶¶ 57-64, attached as Exhibit "2."

### 8. Permissive Factors

The *Prudential* permissive factors, listed above, "are substantially similar to the factors provided by *Girsh*." *NFL Players*, 307 F.R.D. at 396 (citing and quoting *In re Pet Food Prods. Liab. Litig.*, 2008 WL 4937632, at *24 (D.N.J. Nov. 18, 2008), *aff'd in part*, *vacated in part*, *remanded*, 629 F.3d 333 (3d Cir. 2010)). As set forth above, the *Girsh* factors are satisfied. In this case, the permissive *Prudential* factors that may not have been already considered as part of the *Girsh* evaluation all weigh in favor of the Settlement.

> a. *Prudential Factor No. 4: Whether Class Members are Accorded the Right to Opt Out of the Settlement*

Pursuant to the Court's July 12, 2023 Preliminary Approval Order, and the Settlement Class Notice and Claim Form, Settlement Class Members were permitted to opt-out of the Settlement by submitting a request no later than October 10, 2023. *See* SA Exs. "B," "C," attached

as Exhibit "1" (Settlement Class Notice and Settlement Class Claim Form).  (*See also* Prelim. Approval Order.)  [ECF 59].

    b.  *Prudential Factor No. 5: Whether any Provisions for Attorneys' Fees are Reasonable*

  After agreeing to the principal terms set forth in the Settlement providing for Class relief, Class Counsel and Defendants' counsel negotiated the amount of Attorneys' Fees and Expense Award that, following application to the Court and subject to Court approval, would be paid by ALIC directly to Class Counsel (not to exceed $1,502,000).  SA, p. 31 ¶ 17, attached as Exhibit "1;" D. Senoff Decl., ¶¶ 38-39, attached as Exhibit "2."  As set forth in the Fee and Service Award Motion, the work conducted, and the results obtained, sufficiently justify the requested attorneys' fees and expense award and is reasonable.

    c.  *Prudential Factor No. 6: Whether the Procedure for Processing Individual Claims Under the Settlement is Fair and Reasonable*

  The Settlement, through Carroll Services, established a fair and reasonable procedure for processing claims.  *See* SA pp. 16-20, ¶¶ 3-8, attached as Exhibit "1."  The Settlement also provides that any Settlement Class Member whose claim is denied will be provided with written notice and explanation of the denial, as well information on their right to appeal.  *See id.* p. 20, ¶ 7.  In the event a Settlement Class Member whose claim was denied chooses to submit an appeal the Settlement provides for a mechanism for those appeals to be reviewed by both Class Counsel and Defendants' counsel, and in the event an agreement between the parties cannot be reached, a further review by the Court.  *Id.* p. 20 ¶ 8.  The Settlement, as administered, did not result in any denied claims.  This further demonstrates the reasonableness of the claims procedures set forth in the Settlement Agreement.

9.    **The Degree of Direct Benefit Provided to the Class**

"In making [the] determination [of the degree of direct benefit provided to the Class], a district court may consider, among other things, [1] the number of individual awards compared to both the number of claims and the estimated number of class members, [2] the size of the individual awards compared to claimants' estimated damages, and [3] the claims process used to determine individual awards.  Barring sufficient justification, *cy pres* awards should generally represent a small percentage of total settlements funds."  *Baby Prod.*, 708 F.3d at 174.

a.    *The Settlement Provides Significant Direct Benefit to Class Members*

First, a comparison between the number of claims and number of Settlement Class Members reveals 53.23% of the Settlement Class Members elected to participate in the Settlement.

Second, the amount of the individual awards compares favorably to the estimated damages of the Settlement Class Members.  *See* Sec. IV.C.7, *supra*.  Altogether, the claims of the 74 Settlement Class Members total $906,554.58 of the $3,408,000 available fund established to pay Settlement Class Members, leaving the remaining $2,501,445.42 to be distributed to the *cy pres* recipient – NRG Oncology.  Carroll Aff., ¶ 16, attached as Exhibit "4."

Third, the claims process used to distribute awards to Settlement Class Members ensured they would receive the direct benefit of the Settlement.  The Settlement Claim Form afforded Settlement Class Members the option of submitting a claim for $10,000 without **any** documentation or support.  In the event they wished to make a claim for more than $10,000, and up to $24,000, the Settlement Claim Form afforded the Settlement Class Members that option.  To do so, the Settlement Class Members simply had to identify the amount spent or incurred for their PBT treatment and provide either Proof of Payment or Proof of Indebtedness.  Even in the absence of such documentation, the Settlement Class Members could still submit a claim for an amount in

excess of $10,000 by submitting a written statement in the space provided for within the Settlement Claim Form.

          *b.*      *The Amount of the Cy Pres is Appropriate*

"[A] district court does not abuse its discretion by approving a class action settlement agreement that includes a *cy pres* component directing the distribution of excess settlement funds to a third party to be used for a purpose related to the class injury." *Baby Prod.*, 708 F.3d at 172 (citations and footnote omitted). In the context of a class action, the Third Circuit has explained a *cy pres* as:

> [M]oney from a class settlement fund remain[ing] after distributions to class members, perhaps because "class members cannot be located, decline to file claims, have died, or the parties have overestimated the amount projected for distribution." *Baby Prods.*, 708 F.3d at 169. In those cases, parties may seek to "distribute to a nonparty (or nonparties) the excess settlement funds for their next best use—a charitable purpose reasonably approximating the interests pursued by the class." *Id*. *Cy pres* is generally preferable to escheating funds to the state or reverting them to the defendant because it "preserve[s] the [class action's] deterrent effect . . . [and] (at least theoretically) more closely tailor[s] the distribution to the interests of class members." *Id*. at 172.

*In re Google Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 326-327 (3d Cir. 2019).

"'[C]y pres awards should generally represent a small percentage of total settlement funds' unless a district court finds 'sufficient justification.'" *Id.* at 329 (quoting *Baby Prod.*, 708 F.3d at 174). However, when the amount of compensation the class will receive is known, *cy pres* awards have been approved, even if those awards are larger than compensation actually distributed to the class. *See, e.g.*, *In re LivingSocial Marketing & Sales Prac. Litig.*, 298 F.R.D. 1, 14 (D.D.C. 2013).

In *LivingSocial*, the court approved a *cy pres* award of $2.5 million, despite the class only receiving direct distribution of $1.9 million. *Id*. The court in *LivingSocial* specifically distinguished the proposed *cy pres* award from the one at issue in *Baby Products*, noting that the

lack of information about the amount to be distributed to the class was a significant factor in

vacating the fund distribution plan:

> Although there are grounds to argue that the amount of the *cy pres*
> award is disproportionate in relation to the recovery by the class, the
> Court will nonetheless approve it.  In this regard, the Court
> recognizes the Third Circuit's recent pronouncement that "[b]arring
> sufficient justification, *cy pres* awards should generally represent a
> small percentage of total settlement funds." [*Baby Prod.*, 708 F.3d
> at174].  But in that case, a fund of approximately $21.5 million was
> designated for the class but only approximately $3 million actually
> ended up being distributed to the class, leaving a cy pres award of
> $18.5 million.  *Id*. at 168-70.  The sheer disproportion between the
> awards going to claimants and the award going to *cy pres*
> beneficiaries clearly factored into the Third Circuit's decision to
> reverse the district court's approval of settlement.    More
> significantly, however, the Third Circuit held that the district court
> "did not have the factual basis necessary to determine whether the
> settlement was fair to the entire class," and "did not know the
> amount of compensation that will be distributed directly to the
> class." *Id*. at 175.

*LivingSocial*, 298 F.R.D. at 14.  The *LivingSocial* court went on to note a number of decisions in

which courts approved significant *cy pres* award.  *Id*. at 14 (citing *In re Dep't of Veterans Affairs

Data Theft Litig.*, 653 F. Supp. 2d 58, 61 (D.D.C. 2009) (approving settlement agreement including

*cy pres* award likely to be more than $14 million compared to $2.1 million directly distributed to

plaintiffs); *Radosti v. Envision EMI, LLC*, 760 F. Supp. 2d 73, 75 (D.D.C. 2011) (approving

settlement agreement including *cy pres* award of $3.69 million with $8 million in direct

distribution); *Diamond Chem. Co. v. Akzo Nobel Chem. B.V.*, 517 F. Supp. 2d 212, 215, 220-221

(D.D.C. 2007) (approving *cy pres* distribution of $5.1 million out of $12.9 million settlement

fund)).

In this case, the deadline to submit claims has passed, Carroll Services has evaluated the

amounts to be awarded to each Settlement Class Member, and ALIC has not raised any objections

to those amounts.  Therefore, the number of claims, and the value of those claims is known.  *See*

Carroll Aff., ¶ 16 attached as Exhibit "4." 59 Settlement Class Members requested only the $10,000 minimum guaranteed payment, resulting in a distribution of $590,000 and 15 Settlement Class Members sought a payment in excess of this amount, and their claims totaled $316,554.58. *See id.* As a result, $906,554.58 from the settlement fund will be directly distributed to the Settlement Class Members, leaving $2,501,445.42 to be distributed to the *cy pres* recipient.

In *LivingSocial*, the court approved the *cy pres* distribution, noting that "[c]laimants will receive full relief, and it is more desirable for the residual funds to go to the *cy pres* beneficiaries, than back to LivingSocial." *LivingSocial*, 298 F.R.D. at 14. Similar to *LivingSocial*, the Settlement Class Members here will receive substantial relief. 59 Settlement Class Members chose to only seek the minimum payment – despite having the option of making a larger claim without providing any additional documentation. This is strong evidence that these Settlement Class Members have been fully compensated. Of the 15 Settlement Class Members who submitted claims in excess of $10,000, 5 sought a payment less than $24,000 maximum amount, again providing strong evidence that these Settlement Class Members have been fully compensated. The 10 Settlement Class Members who were approved for the $24,000 maximum award indicated their damages ranged from $26,377.72 to $95,506.19 – representing a settlement range of 90.98% to 25.12% of their damages, well within acceptable ranges. *See, e.g.*, *Vista Healthplan, Inc.*, 2020 WL 1922902, at *21-22; *Mehling*, 248 F.R.D. at 462; *Cullen*, 197 F.R.D. at 144.

Moreover, the high response rate, the lack of any objections, and the fact that ***more than half*** the Settlement Class Members elected to participate in the Settlement, further establishes both the significant direct benefit to the Settlement Class Members, as well as the appropriateness of the *cy pres* award. This is further established by direct relationship between the harm the Settlement Class Members suffered and the work engaged in by NRG Oncology.

c.    *NRG Oncology is an Appropriate Cy Pres Recipient for the Settlement*

NRG Oncology is a nonprofit research organization that "seeks to improve the lives of patients with cancer by conducting practice-changing, multi-institutional clinical and translational research."[13]    The diseases NRG Oncology focuses on include adult brain tumors (primary and secondary) and head and neck cancer.[14]    According to NRG's website, there is also a specific emphasis on radiation oncology technology.[15]    NRG Oncology sponsors trials related to Proton Beam Therapy.[16]

Consistent with the geographic scope of the Settlement Class, NRG Oncology has member institutions in all 50 states, including a number of world-renowned hospitals such as Cedars-Sinai Medical Center (CA), Yale University – Yale Cancer Center (CT), Rush University Medical Center (IL), Walter Reed National Military Medical Center (MD), Mayo Clinic (MN), Duke

---

[13] *See* NRG Oncology Website, Support NRG, available at https://www.nrgoncology.org/Support-NRG (last accessed Oct. 23, 2023).

[14] *See* NRG Oncology Website, Scientific Focus, available at https://www.nrgoncology.org/About-Us/Who-We-Are-What-We-Do/Scientific-Focus (last accessed Oct. 24, 2023).

[15] NRG Oncology Website, Scientific Focus, available at https://www.nrgoncology.org/About-Us/Who-We-Are-What-We-Do/Scientific-Focus (last accessed Oct. 24, 2023) ("In addition, NRG Oncology will be capable of developing and testing innovative advanced radiation oncology technology across the [National Cancer Trials Network] through its Center for Innovation in Radiation Oncology.  This center's capabilities will allow the group to expand the transformational work conducted in its legacy groups to systematically evaluate new methods of planning and delivering therapeutic radiation; specifically, NRG Oncology will be positioned to design and execute trials that evaluate new radiation oncology approaches to cancer treatment.").

[16] *See* National Library of Medicine Website, Proton Beam or Intensity-Modulated Radiation Therapy in Preserving Brain Function in Patients with IDH Mutant Grade II or III Glioma, available at https://clinicaltrials.gov/study/NCT03180502 (last accessed Oct. 25, 2023); National Library of Medicine Website, Comparing Proton Therapy to Photon Radiation Therapy for Esophageal Cancer, available at https://clinicaltrials.gov/study/NCT03801876 (last accessed Oct. 25, 2023); NRG Oncology Website, NRG Oncology Study of Photon Versus Proton Therapy for Patients with Newly Diagnosed Glioblastoma Completes Accrual, available at https://www.nrgoncology.org/Home/News/Post/nrg-oncology-study-of-photon-versus-proton-therapy-for-patients-with-newly-diagnosed-glioblastoma-completes-accrual (last accessed Oct. 25, 2023).  *See also* NRG Oncology Website, NCI Proton Letter for NRG Sites to Sent to Patients' Insurance Carrier, available at https://www.nrgoncology.org/Home/News/Post/nci-proton-letter-for-nrg-sites (last accessed Oct. 25, 2023) (NRG Oncology posted a letter from the National Cancer Institute to send to insurance carriers that denied coverage for patients participating in 6 PBT trials, 4 of which are sponsored by NRG Oncology).

University – Duke Cancer Institute (NC), Mount Sinai Hospital (NY), University of Pennsylvania Abramson Cancer Center (PA), and University of Texas MD Anderson Cancer Center (TX).[17]

NRG Oncology has a history of success and is subject to independent audits due to spending more than $750,000 annually in federal grant money. *See* 2 C.F.R. § 200.501(a). Each year from 2015 to 2022, NRG Oncology has received an average of $25,884,326 in federal grants.[18] Each year, the independent audits found:

a. No "material weakness(es)" or "significant deficiency(ies)" concerning NRG Oncology's internal control over financial reporting;

b. No "material weakness(es)" or "significant deficiency(ies)" concerning NRG Oncology's internal control over major programs of its federal awards; and

c. There were no "audit findings disclosed that are required to be reported in accordance with 2 C.F.R. 200.516(a) of the Uniform Guidance."

As explained by the American Society for Radiation Oncology ("ASTRO"), the backing of the government demonstrates NRG's success in achieving its mission:

When NRG submitted its competitive renewal applications for these grants in 2018-2019, substantial progress in fulfilling its mission was clearly demonstrated. The best evidence of this was the publication of at least 51 NRG manuscripts or abstracts that defined or redefined standards of care in just three-and-a-half years of operation. Overall, 302 peer-reviewed manuscripts and 365 abstracts were published by NRG during this time. This outstanding work supported the position of NRG as the major platform for conducting transformative multi-institutional trials for patients with those malignancies in which the group has world class expertise. The competitive renewal of NRG's group operations grant in 2018 received an "Exceptional" score as further evidence of the quality of the group's work. Another example of the group's success is the

---

[17] *See* NRG Oncology, Member Institution Lists, NRG Oncology Roster as of 9/6/2023, available at https://www.nrgoncology.org/About-Us/Membership/Member-Institution-Lists (last accessed Oct. 23, 2023).

[18] *See* ProPublic Nonprofit Explorer, NRG Oncology Tax Filings and Audits by Year, 2015 to 2022 Forms 990, available at https://projects.propublica.org/nonprofits/organizations/900912747 (last accessed Oct. 23, 2023).

> broad engagement of almost all major academic cancer centers and
> many community centers across the United States and Canada.
> Almost 16,000 patients were enrolled by more than 200 full-member
> NRG institutions and their affiliates onto NRG trials or NCTN
> partnership trials in its first three-and-a-half years of activity.[19]

The research funded by NRG Oncology includes research that is directly related to PBT and the

cancer types with which the Settlement Class Members were diagnosed.  Further, the region of

NRG Oncology is national and corresponds with the national scope of the Settlement Class.  NRG

has experience handling and distributing large sums of money to further their mission and is

subject to independent audits.

Accordingly, NRG Oncology is a worthy recipient of the *cy pres* award.

### 10.    Copy of the Settlement Agreement

The Settlement is attached hereto as Exhibit "1."  There are no other agreements that fall

under Rule 23(e)(2)(C)(iv).

### 11.    The Settlement Treats Each Respective Settlement Class Member Equitably

The last requirement of Rule 23(e) is that the Settlement "treats class members equitably

relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Here the Settlement treats all class members

equitably relative to one another because each Settlement Class Member was entitled to submit a

claim to receive a minimum, guaranteed payment of $10,000 – without having to provide any

information concerning their specific claim.  For those Settlement Class Members who wish to

receive an amount in excess of $10,000, those individuals must provide additional information

supporting their claims.  Awards to these Settlement Class Members will be equal to the amount

---

[19]    ASTRO Website, Research Opportunities in NRG Oncology, https://www.astro.org/News-and-Publications/ASTROnews/2021/2021-Spring-ASTROnews/Research-Opportunities-in-NRG-Oncology    (last accessed Oct. 24, 2023).

spent or incurred to secure PBT treatment – up to $24,000. SA pp. 16-17, ¶ 3.B-D, attached as Exhibit "1."

### D.    The Court Should Confirm Certification of the Settlement Class

A party that seeks to certify a settlement class must satisfy the same requirements necessary to maintain a litigation class under Rule 23. *GM Trucks*, 55 F.3d at 778. "However, the existence of a settlement means that 'certain Rule 23 considerations... are not applicable.' For example, because a settlement obviates the need for trial, concerns regarding the manageability of a Rule 23(b)(3) class disappear." *NFL Players*, 307 F.R.D. at 370-371 (quoting *Rodriguez v. Nat'l City Bank*, 726 F.3d 372, 378 (3d Cir. 2013)) (other citations omitted).

> A case may be certified as a class action under Rule 23 when:
>
> (1) The class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). These four requirements are commonly referred to as "numerosity," "commonality," "typicality," and "adequacy of representation." *E.g., Warfarin*, 391 F.3d at 527.

Rule 23(b)(3) permits the court to certify a class in cases where "questions of law or fact common to class members predominate over any questions affecting only individual members," and "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). These dual requirements are commonly referred to as "predominance" and "superiority," respectively.

Further, the substantive terms of the settlement agreement may factor into certain aspects of the certification calculus. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 619 (1997). Here

Defendants have stipulated that, for settlement purposes only, the requisites for establishing class certification with respect to the Settlement Class are met. SA p. 3, attached as Exhibit "1."

### 1.    The Settlement Class is Sufficiently Numerous

Fed. R. Civ. P. 23(a)(1) "requires that a class be so numerous that joinder of all members is impracticable." *NFL Players*, 307 F.R.D. at 371 (quotation omitted). Generally, if the number of plaintiffs exceeds 40, the numerosity requirement is satisfied. *See Stewart v. Abraham*, 275 F.3d 220, 227-228 (3d Cir. 2001). The proposed Settlement Class here easily meets the numerosity requirement because 139 Settlement Class Members have been identified through the Class List. SA p. 16, ¶ 3.C, attached as Exhibit "1."

### 2.    The Settlement Class Seeks Resolution of Common Questions

The commonality requirement of Fed. R. Civ. P. 23(a)(2) is satisfied if the named plaintiff shares at least one question of fact or law with the grievances of the prospective class. *See Stewart*, 275 F.3d at 227. "For purposes of Rule 23(a)(2) even a single common question will do." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 359 (2011).

Here, for purposes of settlement, Plaintiffs and the Settlement Class Members share common issues of law or fact, including:

> a.    All Settlement Class Members sought PBT to treat head, neck, or brain cancer diagnoses;
>
> b.    All Settlement Class Members were participants or beneficiaries in ERISA-governed plans administered and/or insured by ALIC; and
>
> c.    All Settlement Class Members had pre-certification requests and/or post-service claims for PBT denied by ALIC between June 1, 2017 and October 9, 2020, during which time CPB No. 0270 provided that PBT for treating head, neck, or brain cancer was experimental and investigational.

These common questions are sufficient to satisfy the commonality requirement for purposes of settlement.

### 3. The Claims of the Named Plaintiffs are Typical of the Settlement Class Members

The "typicality requirement is designed to align the interests of the class and the class representatives so that the latter will work to benefit the entire class through the pursuit of their own goals." *Prudential*, 148 F.3d at 311 (citations omitted). "[The Third Circuit] also ha[s] set a low threshold for typicality." *In re Nat'l Football League Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016) (internal quotes and citations omitted). The typicality requirement of Rule 23(a)(3) is satisfied for purposes of approving the Settlement because Plaintiffs' claims are reasonably coextensive with those of absent Settlement Class Members, and because Plaintiffs possess the same interest and suffered the same injury as the absent Settlement Class Members. For purposes of settlement, Plaintiffs' claim for benefits for PBT treatment is typical of the claims of the Settlement Class Members.

### 4. Class Counsel and Plaintiffs Satisfy the Adequacy Requirements

To meet the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4), a named plaintiff must show that: (1) the potential named plaintiff has the ability and the incentive to represent the claims of the class vigorously; (2) he or she has obtained adequate counsel; and (3) there is no conflict between the individual's claims and those asserted on behalf of the class. *Hassine v. Jeffes*, 846 F.2d 169, 179 (3d Cir. 1988).

The adequacy of representation requirement is met here for purposes of settlement because Plaintiffs have the same interests as the Settlement Class Members. There is no conflict between the Plaintiffs and the Settlement Class Members in this case, and Plaintiffs' claims are in line with the claims of the Class. The Plaintiffs have and will continue to aggressively and competently assert the interests of the Settlement Class Members, and Class Counsel are skilled and

experienced in insurance litigation and insurance class actions.  D. Senoff. Decl. ¶¶ 2, 7, 57-59, attached as Exhibit "2."

### 5.     The Settlement Class Satisfies the Predominance and Superiority Requirements of Federal Rule of Civil Procedure 23(b)(3)

Under Fed. R. Civ. P. 23(b)(3), class certification is appropriate if "the court finds that the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."  Fed. R. Civ. P. 23(b)(3).

For the reasons discussed above, the Settlement Class satisfies the predominance requirement for purposes of settlement.  In addition, allowing the Settlement Class Members the opportunity to participate in a class settlement that yields an immediate and substantial benefit is superior to having a multiplicity of individual and duplicative proceedings based on the nature of the specific claims here.  It is also superior to the alternative of leaving the Settlement Class Members' rights unaddressed due to the difficulty of finding legal representation and filing claims on an individual basis.  Accordingly, Plaintiffs respectfully request that the Court provisionally certify the Settlement Class for settlement purposes only.

### 6.     The Settlement Class is Ascertainable

In addition to the Rule 23 requirements, courts in the Third Circuit also analyze the judicially created doctrine of ascertainability when evaluating whether to certify a class.  A class is ascertainable if "(1) the class is 'defined with reference to objective criteria'; and (2) there is 'a reliable and administratively feasible mechanism for determining whether putative class members fall within the class definition.'"  *Byrd v. Aaron's Inc.*, 784 F.3d 154, 163 (3d Cir. 2015).  Here, the Settlement Class is defined based on objective criteria.  *See* Sec. III.A, *supra*.  Determining whether someone is a Settlement Class Member is administratively feasible because such a

determination may be made based on ALIC's records. The identity of the Settlement Class Members, their specific diagnosis, and whether their pre-certification request and/or claim for PBT was denied are all identifiable through ALIC's records.

### E.    The Notice to the Settlement Class Members Satisfied Due Process

The United State Supreme Court has held that notice of a class action settlement must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Further:

> "[T]o satisfy due process, notice to class members must be reasonably calculated under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *In re Ikon Office Solutions, Inc. Sec. Litig.*, 194 F.R.D. 166, 174 (E.D. Pa. 2000) (citations and internal quotations omitted); *see also* [*Mehling*, 246 F.R.D. at 477] (approving proposed notice for settlement class when notice "adequately informs potential class members in clear, understandable language"). Individual notice should be provided to all members who can be identified through reasonable efforts. *In re Corel Corp. Inc. Sec. Litig.*, 293 F. Supp. 3d [at 491].

*Glaberson v. Comcast Corp.*, 2014 WL 7008539, at *6 (E.D. Pa. Dec. 12, 2014).

Here, the Notice and manner of distribution negotiated and agreed upon by the parties, and approved by the Court's July 12, 2023 Preliminary Approval Order, is clear, straightforward, and provided information on the meaning and nature of the terms and provisions of the Settlement, the monetary awards that the Settlement will provide to eligible Settlement Class Members, the scope of the release, the request for attorneys' fees and costs, and the procedures and deadlines for making a claim, opting out, or objecting. *See* Settlement Class Notice, attached as Exhibit "5." Further, Carroll Services has certified that:

a.      On August 7, 2023 it mailed the Notice and Claim Form, by first class mail, to the address for each member listed on the verified Class List provided by ALIC;

b.      Any mail returned as undeliverable that provided an updated address for a Settlement Class Member caused Carroll Services to promptly reissue the Notice and Claim Form to the updated address;

c.      A search for a new address was performed for any Settlement Class Member who did not submit a Claim Form approximately 3 weeks after the initial mailing, and if a new address was located Carroll Services promptly reissued the Notice and Claim to the updated address;

d.      A search for a new address was performed for any mail returned as undeliverable that did not provide an updated address for the Class member, and if a new address was located Carroll Services promptly reissued the Notice and Claim Form to the updated address

See Carroll Services Aff., ¶¶ 6-10 attached as Exhibit "4."

## V.      **CONCLUSION**

Based upon the foregoing reasons, Plaintiffs respectfully request that this Court grant their

Motion for Final Approval and enter the accompanying Proposed Final Approval Order.

Respectfully submitted,

DATED: NOVEMBER 20, 2023

BY: _David S. Senoff_____

FIRST LAW STRATEGY GROUP, LLC
David S. Senoff, Esquire
Attorney I.D. No. 65278
121 S. Broad Street, Suite 300
Philadelphia, PA 19107
Phone: (215) 258-4700
Facsimile: (215) 258-4777
dsenoff@firstlawstrategy.com

RICHARD M. OCHROCH & ASSOCIATES, P.C.
Richard Ochroch, Esquire
Brett N. Benton, Esquire
Andrew R. Ochroch, Esquire
Attorney I.D. Nos. 21432 / 93267 / 315797
318 South 16th Street
Philadelphia, PA 19102
Facsimile: (215) 893-4209
bbenton@ochroch-law.com
rochroch@ochroch-law.com
aochroch@ochroch-law.com

Attorneys for Plaintiffs and the Settlement Class

## CERTIFICATE OF SERVICE

I, David S. Senoff, Esquire, hereby certify that on the date below a true and correct copy of the forgoing Unopposed Motion and Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement were served via the Court's CM/ECF electronic filing system.

DATED: NOVEMBER 20, 2023

BY: _David S. Senoff_____

FIRST LAW STRATEGY GROUP, LLC
David S. Senoff, Esquire
Attorney I.D. No. 65278
121 S. Broad Street, Suite 300
Philadelphia, PA 19107
Phone: (215) 258-4700
Facsimile: (215) 258-4777
dsenoff@firstlawstrategy.com

RICHARD M. OCHROCH & ASSOCIATES, P.C.
Richard Ochroch, Esquire
Brett N. Benton, Esquire
Andrew R. Ochroch, Esquire
Attorney I.D. Nos. 21432 / 93267 / 315797
318 South 16th Street
Philadelphia, PA 19102
Facsimile: (215) 893-4209
bbenton@ochroch-law.com
rochroch@ochroch-law.com
aochroch@ochroch-law.com

Attorneys for Plaintiffs and the Settlement Class