IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| PAUL MOLLOY and JACQUELINE MOLLOY, on behalf of themselves and all others similarly situated<br><br>Plaintiffs,<br><br>v.<br><br>AETNA LIFE INSURANCE CO., *et al.*<br><br>Defendants. | CIVIL ACTION NO. 19-3902 |

MEMORANDUM OPINION

Rufe, J.                                                                                                           January 25, 2024

      Plaintiffs Paul and Jacqueline Molloy filed a class action, alleging that ALIC breached its fiduciary duty under the Employment Retirement Income Security Act of 1974[1] by categorically and improperly denying Paul Molloy and other class members' requests for proton beam therapy ("PBT") treatment.

      By Order dated July 12, 2023, the Court certified a settlement class, preliminarily approved the settlement, directed notice, and scheduled a hearing to determine whether to grant final approval of the settlement.[2] Plaintiffs now seek final approval of their proposed settlement with Defendants Aetna Life Insurance Company ("ALIC") and Aetna Inc. The Court must: (1) determine if the requirements for class certification under Rule 23(a) and (b) are satisfied; (2)

---

[1] 29 U.S.C. § 1001 *et seq*.

[2] Order of Preliminary Approval [Doc. No. 59].

assess whether notice to the proposed class was adequate; and (3) evaluate if the proposed settlements are fair under Rule 23(e).[3]

In accordance with Federal Rule of Civil Procedure 23(e), the Court held a Final Fairness Hearing on December 19, 2023, to determine whether the proposed class-action settlement was "fair, reasonable, and adequate."[4] After identifying on the record an inadequacy with the Settlement Amount's *cy pres* award, the Court ordered the parties to file a joint status letter by January 19, 2024 to inform the Court whether the parties came to a new agreement.[5] On January 17, 2024, the parties provided the Court with a stipulation that addresses the deficiency noted by this Court. Based on the parties' revised settlement proposal, the Court approves the Final Settlement and attorneys' fees, as modified through the parties' stipulation. In addition, the Court directs counsel to notify the one person who opted out of the Settlement of the Revised Settlement Amount.[6]

## I.  CLASS CERTIFICATION

### A.  RULE 23(A)

To certify a class, the Court must determine that the following factors under Rule 23(a) are met: numerosity, commonality, typicality, and adequacy of representation.[7] The Court preliminarily certified the following settlement class:

> All members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by ALIC,

---

[3] *See In re Nat'l Football League Players Concussion Inj. Litig.,* 775 F.3d 570, 581 (3d Cir. 2014).

[4] FED. R. CIV. P. 23(e)(2).

[5] Order [Doc. No. 67].

[6] This is reflected in ¶ 14 of the accompanying Order.

[7] FED. R. CIV. P. 23(a).

> who themselves, or who, as a subscriber, had a beneficiary covered by their benefits plan, who:
>
> - Had a denied PBT benefit claim and/or denied PBT precertification request, for which either the claim was incurred, or the request was submitted, between June 1, 2017 and October 9, 2020 ("Class Period"); and
> - Had a diagnosis code for head, neck, or brain cancer within the list of codes covered under Section 1 of the October 2020 revision to Clinical Policy Bulletin No. 0270; and
> - Did not have benefit claims for intensity-modulated radiation therapy paid or adjudicated as paid by ALIC.
> - The following persons are excluded from the Class: all individuals under the age of 21 at the time the claim for benefits was incurred or request was submitted; and all individuals covered by a Medicare Advantage plan administered or insured by ALIC. Also excluded from this definition are Defendants, as well as Defendants' attorneys, agents, insurers, the attorneys representing Defendants in this case, the Judge(s) to whom this case is assigned and their immediate family members, all persons who request exclusion from (opt-out of) the Settlement, and all persons who previously released any claims encompassed in this Settlement.[8]

Numerosity is satisfied because 139 Settlement Class Members have been identified through the Class List.[9] A single common issue is enough to satisfy the commonality requirement, and typicality is met where "the action can be efficiently maintained as a class and . . . the named plaintiffs have incentives that align with those of absent class members so as to assure that the absentee's interests will be fairly represented."[10] Here, there are common issues of law and fact as to all class members: (1) all Settlement Class Members sought PBT to treat head,

---

[8] Order of Preliminary Approval [Doc. No. 59] at 3.

[9] Pl.'s Mot. [Doc. No. 62] at 31. *See Stewart v. Abraham*, 275 F.3d 220, 226–27 (3d Cir. 2001) (more than 40 class members generally satisfies numerosity).

[10] *Baby Neal v. Casey*, 43 F.3d 48, 56–57 (3d Cir. 1994) (citation omitted).

neck, or brain cancer diagnoses; (2) all Settlement Class Members were participants or beneficiaries in ERISA-governed plans administered and/or insured by ALIC; and (3) all Settlement Class Members had pre-certification requests and/or post service claims for PBT denied by ALIC between June 1, 2017 and October 9, 2020, during which time CPB No. 0270 provided that PBT for treating head, neck, or brain cancer was experimental and investigational.[11]

Plaintiffs also have demonstrated that "the representative parties will fairly and adequately protect the interests of the class."[12] The named Plaintiffs' interests align with those of other class members. The settlement agreement provides that each of the two class representatives will receive a service award of $25,000 (for a total of $50,000). In the context of the settlement award, the Court finds this a reasonable amount, as the representatives have been actively involved in the extensive prosecution of the case. Although the case was filed in 2019, Plaintiffs have worked with Class Counsel since 2017 to provide background information about themselves and their medical history.[13] Class counsel are qualified, experienced, and fully capable of litigating the class members' claims.[14]

### B.  RULE 23(B)

The settlement class also satisfies at least one of the three requirements listed in Rule 23(b).[15] The Court finds that "questions of law or fact common to class members predominate

---

[11] Pl.'s Mot. [Doc. No. 62] at 31.

[12] FED. R. CIV. P. 23(a)(4).

[13] Pl.'s Mot. [Doc. No. 62] at 18–19.

[14] *In re Warfarin Sodium Antitrust Litigation*, 391 F.3d 516, 532 (3d Cir. 2004).

[15] *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011).

4

over any questions affecting only individual members" and that the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy."[16] Plaintiffs have shown that for the purposes of settlement a class action is a "fair and efficient adjudication of the controversy . . . against those of alternative available methods of adjudication."[17] The participation by Settlement Class Members in the proposed Settlement allows them to yield an immediate and significant benefit, which is superior to individually prosecuting their claims. As directed by Rule 23(b)(3), the Court has considered "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; [and] (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum . . . ."[18]

### C.  Notice to Settlement Class Members

As part of the preliminary approval, the Court directed that notice be provided to the class members.[19] "Rule 23(c)(2) requires 'the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort.'"[20] The notice clearly and concisely stated in plain, easily understood language: (1) the nature of the action; (2) the definition of the class certified; (3) the class claims, issues or defenses; (4) the class member's right to enter an appearance by an attorney; (5) the class member's right to be

---

[16] FED. R. CIV. P. 23(b)(3).

[17] *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d at 533–34 (3d Cir. 2004) (citations omitted).

[18] FED. R. CIV. P. 23(b)(3).

[19] FED. R. CIV. P. 23(c)(2)(B).

[20] *Carlough v Amchem Prods. Inc.*, 158 F.R.D. 314, 325 (E.D. Pa. 1993) (quoting FED. R. CIV. P. 23(c)(2)).

excluded from the class; (6) the time and manner for requesting exclusion; and (7) the binding effect of settlement on class members."[21]

Carroll Services has certified that:

a. On August 7, 2023 it mailed the Notice and Claim Form, by first class mail, to the address for each member listed on the verified Class List;

b. Any mail returned as undeliverable that provided an updated address for a Settlement Class Member caused Carroll Services to promptly reissue the Notice and Claim Form to the updated address;

c. A search for a new address was performed for any Settlement Class Member who did not submit a Claim Form approximately 3 weeks after the initial mailing, and if a new address was located Carroll Services promptly reissued the Notice and Claim to the updated address;

d. A search for a new address was performed for any mail returned as undeliverable that did not provide an updated address for the Class member, and if a new address was located Carroll Services promptly reissued the Notice and Claim Form to the updated address[22]

The notice complies with the Court's Preliminary Approval Order of July 12, 2023[23] and satisfies the requirements of Rule 23.

---

[21] *In re Am. Invest. Life Ins. Co. v. Annuity Mktg. Sales Pracs. Litig.*, 263 F.R.D. 226, 237 (E.D. Pa. 2009) (citing FED. R. CIV. P. 23(c)(2)(B)).

[22] *See* Carroll Services Aff., Exhibit 4 at ¶¶ 6-10 [Doc. No. 62].

[23] Order of Preliminary Approval [Doc. No. 59].

## II.     RULE 23(E)

The Court determines that the proposed settlements are "fair, reasonable and adequate."[24] A settlement is fair where "(1) the settlement negotiations occurred at arm's length; (2) there was sufficient discovery; (3) the proponents of the settlement are experienced in similar litigation; and (4) only a small fraction of the class objected."[25] Each of these factors is met. Negotiations were conducted at arm's length and occurred over an extensive period beginning in October 2020.[26] Substantial discovery has been conducted into the prospective class and costs of the PBT claims. Class Counsel are experienced and accomplished in insurance coverage litigation and class actions, and there have been no objections to the settlements.

> Rule 23(e)(2) requires the Court to further consider whether:
>
> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
>   (i) the costs, risks, and delay of trial and appeal;
>   (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;
>   (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
>   (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.[27]

---

[24] *In re Prudential Ins. Co. Am. Sales Prac. Litig. Agent Actions*, 148 F.3d 283, 316 (3d Cir. 1998) (quoting *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 785 (3d Cir. 1995)); *see also* FED. R. CIV. P. 23(e).

[25] *In re Warfarin*, 391 F.3d at 535 (quoting *In re Cendant Corp. Litig.*, 264 F.3d 201, 232 n.18 (3d Cir. 2001)).

[26] Pl.'s Mot. [Doc. 62] at 12.

[27] FED. R. CIV. P. 23(e)(2)(A)–(D).

The Third Circuit set forth nine factors (commonly referred to as the *Girsh* factors) that the Court must consider when determining the reasonableness of a settlement:

> (1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.[28]

The *Girsh* factors weigh in favor of settlement. The litigation has been ongoing for four years and was only reached after: (1) the parties' theories of liabilities and defenses were briefed through two motions to dismiss by Defendants; (2) the review of a significant amount of claims data pertaining to ALIC's handling of PBT claims for the treatment of the central nervous

---

[28] *Girsh v. Jepson*, 521 F.2d 153, 156-157 (3d Cir. 1975) (ellipses and citation omitted).

The Third Circuit also has identified 6 permissive factors to consider (the *Prudential* factors):

> [1] the maturity of the underlying substantive issues, as measured by experience in adjudicating individual actions, the development of scientific knowledge, the extent of discovery on the merits, and other factors that bear on the ability to assess the probable outcome of a trial on the merits of liability and individual damages; [2] the existence and probable outcome of claims by other classes and subclasses; [3] the comparison between the results achieved by the settlement for individual class or subclass members and the results achieved – or likely to be achieved – for other claimants; [4] whether class or subclass members are accorded the right to opt out of the settlement; [5] whether any provisions for attorneys' fees are reasonable; and [6] whether the procedure for processing individual claims under the settlement is fair and reasonable.

*NFL Players*, 307, F.R.D. at 395-396 (quoting *In re Prudential Ins. Co. of Am. Sales Pract. Litig.*, 148 F.3d 283, 323-324 (3d Cir. 1998)).

system, head, and neck cancers; (3) Plaintiffs' consultation with experts; and (4) a lengthy negotiation process that took over than two years to conclude.[29]

A potential trial would further prolong the litigation and would raise complicated issues as to liability based on Clinical Policy Bulletin No. 0270 that ALIC used in the decision to deny claims for PBT to treat head, neck, and brain cancers, as well as damages. Class Counsel conducted extensive discovery to determine the size of the prospective class, as well as the costs of the PBT claims. The reaction to the Settlement by the Class has been largely positive: over half of the Settlement Class Members have submitted valid Settlement Claim Forms; there have been no objections; and only one Class Member has opted out.[30]

The Court finds that the Settlement Fund, as revised by the parties, is reasonable in light of the best possible recovery and all attendant risks. The Court raised concerns at the Final Fairness Hearing as to the initial distribution of the settlement proceeds of $4,860,000 ($3,408,000 for the Settlement Fund and $1,452,000 for the Attorneys' Fees and Litigation Expenses). Based on the claims submitted by class members, only $930,554.58 of the Settlement Account was to have been used to pay the Settlement Class Members, while the remaining $2,477,455.42 was to be distributed to NRG Oncology, Inc. as a *cy pres* award. The Court noted on the record at the Final Fairness Hearing that the *cy pres* award was too large in relation to the compensation being provided to the impacted Class Members, and directed the parties to confer as to a revised distribution.

---

[29] Order of Preliminary Approval [Doc. No. 59] at 8.

[30] Pl.'s Mot. [Doc. No. 62] at 14.

The Third Circuit has recognized *cy pres* distributions as "permissible," but also as "inferior to direct distributions to the class because they only imperfectly serve the purpose of the underlying causes of action—to compensate class members.["][31] The Third Circuit recently held that "courts should scrutinize 'cy pres remedies in settlements where class members could have been compensated directly…'"[32] "'[C]y pres awards should generally represent a small percentage of total settlement funds' unless a district court finds 'sufficient justification.'"[33]

On January 17, 2024, the parties provided the Court with a joint stipulation to revise the terms of the Settlement. Although the Revised Settlement Amount of $2,588,329.62 is less than the original fund, the amount of the settlement to be paid directly to the Settlement Class Members increases substantially from $930,554.58 to $1,750,224.96. The awards to the Settlement Class Members will be determined by increasing the amount approved by the Claims Administrator for each such settlement Class Member by 66.67%, with a minimum payment of $20,000 and a maximum payment of $40,000 for each Settlement Class Member. The *cy pres* award to NRG Oncology, Inc. will be the remaining $828,104.66 portion of the Revised Settlement Amount, as opposed to the initial amount of $2,477,455.42. The Court concludes that this revised proposal benefits the class substantially and that the revised *cy pres* award is acceptable.

First, NRG Oncology is an appropriate *cy pres* recipient for the settlement. NRG Oncology is a nonprofit research organization that "seeks to improve the lives of patients with

---

[31] *In re Baby Prods. Antitrust Litig.*, 708 F.3d 163, 169 (3d Cir. 2013).

[32] *In re Wawa, Inc. Data Security Litigation*, 85 F.4th 712, 723 n.19 (3d Cir. 2023).

[33] *In re Google Cookie Placement Consumer Priv. Litig.*, 934 F.3d 316, 329 (3d Cir. 2019).

cancer by conducting practice-changing, multi-institutional clinical and translational research."[34] It conducts research related to adult brain tumors and head and neck cancer and also sponsors clinical trials related to PTB. As the Court noted in its Preliminary Approval Order, the purpose of the recipient organization directly connects to the claims in this case.

Second, the revised settlement distribution results in a reasonable compensation for the Settlement Class Members with the remaining funds going to NRG Oncology. Class Counsel's expert Mr. Scherf "opined based on claims data provided by ALIC that a full course of PBT treatment totaled on average $61,838.08, and the allowed amount for covered PBT treatment ranged between $27,827 and $34,011."[35] As all Class Members are now compensated in amounts between $20,000 to $40,000, including those who did not submit proof of out-of-pocket costs, the Court finds that the settlement provides significant direct benefit to Class Members and that the *cy pres* award is reasonable.

Considering all of the attendant risks of litigation of Plaintiff's claims and the substantial awards to Settlement Class Members, the settlement is reasonable under the *Girsh* factors.

### III. ATTORNEYS' FEES AND EXPENSES

Plaintiffs separately filed a Motion for Award of Attorneys' Fees and Expenses to Class Counsel, and Service Awards to Class Representatives.[36] Plaintiff seeks $1,407,099.25 in attorneys' fees, to be paid separately from the Revised Settlement Amount. There are generally two methods used by courts to calculate attorneys' fees: the percentage of recovery method and

---

[34] *See* NRG Oncology Website, Support NRG, available at https://www.nrgoncology.org/Support-NRG.

[35] Pl.'s Mot. [Doc. 62] at 16.

[36] Pl.'s Mot. [Doc. 63].

the lodestar method. The percentage of recovery method is "favored where counsel's efforts have achieved a common fund because it allows the court to award fees in a manner that rewards counsel for success and penalizes counsel for failure or waste."[37]

Here, although Class Counsels' attorneys' fees are allocated separately from the monetary relief to the Class, they originate from the same source (ALIC) and are therefore a constructive common fund.[38] In Plaintiffs' initial Motion, the counsel fees and expenses constituted 29.88% of the settlement fund. The counsel fees and expenses constitute 35.94 % of the Revised Settlement Amount provided for in the parties' joint stipulation.[39] This is still well within an appropriate range of fee awards in common fund cases.[40] Furthermore, the *Gunter/Prudential* factors established by the Third Circuit weigh in favor of finding the requested fees reasonable.[41]

---

[37] *Flores v. Express Servs., Inc.*, 2017 WL 1177098, at *1-2 (E.D. Pa. Mar. 30, 2017).

[38] *Dewey v. Volkswagen Aktiengesellschaft*, 558 Fed. Appx. 191, 197 (3d. Cir. 2014) ("Granted, this case does not involve a true common fund because Volkswagen is paying the fee out of its own pocket and not through the reimbursement fund. However, where the reality is that the fund and the fee are paid from the same source—in this case, Volkswagen—the arrangement 'is, for practical purposes, a constructive common fund,' and courts may still apply the percent-of-fund analysis in calculating attorney's fees.) (quoting *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 820–21 (3d Cir.1995)).

[39] $1,452,000 + $2,588,329.62= $4,040,329.62. $1,452,000 divided by $4,040,329.62 is .3594.

[40] *See Esslinger v. HSBC Bank Nevada, N.A.*, 2012 WL 5866074, at *14 (E.D. Pa. Nov. 12, 2012) ("In the Third Circuit, fee awards in common fund cases generally range from 19% to 45% of the fund."); *see also Boone v. City of Philadelphia*, 668 F. Supp. 2d 693, 714 (E.D. Pa. 2009) ("A study referenced by another court in [the Eastern District of Pennsylvania] analyzed 289 class action settlements ranging from under $1 million to $50 million and determined that the average attorneys' fees percentage to be 31.71% and the median to be one-third." (citing *In re Rite Aid Corp. Sec. Litig.*, 146 F. Supp. 2d 706, 735 (E.D. Pa. 2001)).

[41] The factors are: (1) the size of the fund created and the number of persons benefitted; (2) the presence or absence of substantial objections by members of the class to the settlement terms and/or fees requested by counsel; (3) the skill and efficiency of the attorneys involved; (4) the complexity and duration of the litigation; (5) the risk of nonpayment; (6) the amount of time devoted to the case by plaintiffs' counsel; (7) the awards in similar cases; (8) the value of benefits accruing to class members attributable to the efforts of class counsel as opposed to the efforts of other groups, such as government agencies conducting investigations; (9) the percentage fee that would have been negotiated had the case been subject to a private contingent fee agreement at the time counsel was retained; and (10)

## IV. CONCLUSION

The Court has determined that the settlement, as modified through the parties' stipulation, is fair and reasonable, and that all applicable requirements have been met. Therefore, the Court will approve the settlement and attorneys' fees and the stipulation will be approved. An order will be entered.

---

any "innovative" terms of settlement. *See Gunter v. Ridgewood Energy Corp.*, 223 F.3d 190, 195 n.1 (3d Cir. 1990); *In re Prudential Ins. Co. America Sales Practice Litig. Agent Actions*, 148 F.3d 283, 333 (3d Cir. 1998).

These factors are largely repetitive of the factors discussed above. The Class Counsel fee is well within the range that other District Courts grant in similar cases and is lower than the 40% individual contingency fee agreement Class Counsel entered into with the Plaintiffs in this case. *See Cigna-Am.*, 2019 WL 4082946, at *14 (citing *In re Merck & Co., Inc. Vytorin ERISA Litig.*, 2010 WL 547613, at *9 (D.N.J. Feb. 9, 2010) ("In complex ERISA cases, courts in this Circuit and others also routinely award attorneys' fees in the amount of one-third of the total settlement fund."). To Class Counsel's knowledge, no government agencies have initiated investigations or litigation against Defendants concerning ALIC's protocol to consider PBT as experimental. *See* Pl.'s Mot. [Doc. No. 63] at 13.